JOSIAH L. BALDWIN et al., executors,

v.

JEROME TAYLOR et al., executors.

A testator gave several specific legacies, and also made special provisions for his wife. He then directed that his executors should sell all the residue of his estate, and, after paying all just claims and legacies from the proceeds thereof, divide the balance equally among his children or their heirs. By the next section of the will, he directed that, in relation to the several gifts and devises to his children in the will, if any of his children should die leaving heirs, their portion should go to such heirs; if not, it should be equally divided among his surviving children.—*Held,* that these two sections of the will must be construed together, and that the object of the latter clause was to provide that the property given to the testator's children should not go out of the family in case of their death, before they should be entitled to receive it, and therefore that the interest of one of testator's sons in the proceeds of the residue which he had actually received was absolute, and could not be defeated by his subsequent death without issue.

Bill for relief. On final hearing on pleadings and proofs.

*Mr. S. Morrow* and *Mr. W. S. Gummere,* for complainants.

*Mr. C. S. Titsworth,* for defendants.

THE CHANCELLOR.

This is a suit brought by the surviving executors of the will of Samuel Baldwin, deceased, late of Essex county, against the executors of the will of his deceased son, Harris M. Baldwin, late of Newark. The object of the suit is to recover from the estate of the latter the money received by him from the estate of his father, as one of the legatees, under his will. The money in question was lawfully received by Harris M. Baldwin from his father's estate, but the complainants insist that his right thereto was defeated by his death without issue. The will of Samuel Baldwin was made in August, 1855, and he died in September, 1856. By it, after providing for the payment of his debts and funeral expenses, he gave to his wife so much of his

household furniture as she might need for her own use, a horse, a carriage and a cow, and $100, to be paid her by his executors as soon as conveniently could be done after his death; also the interest of $4,000 so long as she should remain his widow, and directed that if she should remarry she should have the interest of only $2,000. He also gave her the use of his homestead dwelling-house and the barn, and about five acres of the land (a farm), and directed that at her death the property be sold, and that any one of his heirs should have the privilege of purchasing it at a fair valuation. He then gave to his son Samuel his stock in an insurance company; to his niece, Betsey Munson, certain building lots in Newark; to his four children, his woodland in equal parts; to his brother Abraham, and to a daughter of that brother, certain legacies, and made provision for the care, if necessary, of his brothers and sisters. He then proceeded as follows:

"*Ninth.* All the residue of my estate, real and personal, I do direct my executors, hereinafter named, to sell in such a way as they shall think best, and, out of the proceeds of said sale, to pay all the just claims against my estate, and the legacies herein devised; also invest safely the sum of $4,000, and pay over the interest thereof, semi-annually, to my wife, Mary, or the half part thereof, according to section second of this my will [in case of her remarriage]. The balance I do direct to be divided equally among my children or their heirs.

. "*Tenth.* In relation to the several gifts and devises to my children, in this, my last will and testament, it is my will, and I do direct, that if any of them shall die leaving heirs, their portion shall go to such heirs, if not, it shall be divided equally among my surviving children."

The widow died in 1868. After her death, and in 1871, the farm was sold. The bill alleges that Harris M. Baldwin (he was one of the executors of his father's will) received for his share of the estate, $24,065.87. He died without issue in 1882. The complainants, who, as before stated, are the surviving executors of Samuel Baldwin, insist that, under the will, Harris M. Baldwin's interest in his father's estate was defeasible by his death without issue, and therefore, on his death, went over to

his surviving brothers, the complainants, and they pray a decree accordingly.

The question presented is merely as to the true construction of the ninth and tenth sections of the will, which are above quoted.

The testator directed an absolute conversion of his real estate. His whole residuary estate is therefore, for the purposes of succession, to be regarded as personal. As to so much of the residuary estate as by the ninth section is directed to be divided—the "balance" mentioned in that section—the direction is to divide it equally among the testator's children, "or their heirs." The words "or their heirs" are evidently substitutionary, and by the word "heirs" the testator undoubtedly meant "issue." His intention, judged by that section alone, was to provide that his children should have that balance absolutely, if they should be alive at the time of the distribution to take it, but if any of them should then be dead, their issue should take in their stead. He then goes on, in the next section, to say that in relation to the several gifts and devises to his children, he directs that if any of his children should die leaving heirs (meaning issue), the portion (or share) of such decedent should go to such issue, but if the decedent should leave no issue, that then the portion or share should be divided among the testator's surviving children.

The reference here is manifestly to the time of distribution, and the object of the testator was to provide that if any of his children should be dead at the time when he or she would have been entitled to receive any part of his estate, his or her issue should take the share, or legacy, or devise of the decedent; and if there should be no such issue, then the share, or legacy, or devise should go to the testator's other children then living. The testator had four children. When the will was made, they were all in middle age. Three of them were married, and one, a son, Josiah, was single. There is no evidence whatever in the will, unless it is found in the language of the tenth section, that the testator intended to reduce the gifts to his children to life interests only in any event. And in the connection in which that section is placed, following immediately the provision of the ninth, in regard to substitution in the division to be made of

residue under the latter section, it is quite clear to my mind, that the only purpose of the tenth section was to provide that the property given to the testator's children should not go out of the family in case of their death before they should be entitled to receive it. The language signifies this. He directs that, in the contingency of the death of any of his children leaving issue, the " portion " shall " go " to the issue, but if no issue, then that it (the " portion ") be divided among the testator's surviving children.

The tenth section is merely an extension of the substitutionary provision of the ninth. It is as if the testator had said the balance of residuary estate mentioned in the ninth section—

" Is to go to my children if, at the time of distribution, they be alive, but, if dead, then to their issue in their stead, and, indeed, I extend the provision to all I have given my children in this will."

Mr. Hawkins, in his treatise on the construction of wills, says that where a gift of the absolute interest in property to one person is followed by a gift of it to another in a particular event, the disposition of the courts is to put such a construction on the gift over as will interfere as little as possible with the prior gift, and that when death is spoken of *as a contingent event,* a gift over in the event of death may well be considered to mean not death at any time, but death before a particular period, *e. g.,* the period of distribution ; and thus the gift over may be read as a gift *by way of substitution* and not of remainder, and that it is consequently a rule of construction, that where there is a bequest to one person, and " in case of his death," to another, the gift over is construed to take effect only in the event of the death of the prior legatee before the period of payment or distribution, unless an intention appear to the contrary. *Hawk. Wills 254* See *Beatty* v. *Montgomery, 6 C. E. Gr. 324,* and *Williamson* v. *Chamberlain, 2 Stock. 373.* I am aware that the general rule is established in England that where the context is silent, the words referring to the prior death of the legatee, in connection with some collateral event, apply to the happening of the contingency at any time. *O'Mahoney* v. *Burdett, L. R. (7 H. of L.) 388.*

But I am clearly of opinion that the words under consideration were not used by the testator to express an intention to limit the gifts over, but only as a provision as to who should receive them in the first instance; in other words that the language is merely substitutionary. It is a rule that the courts, to effectuate the manifest intent of the testator, will, if necessary, insert omitted words, alter the collocation of sentences, or even read the will directly contrary to the primary signification of its language. In *Pennington* v. *Van Houten, 4 Hal. Ch. 272; S. C. on appeal, Id. 745,* the testator gave to his son (then a child of three years of age) all the residue of his property, and ordered his executors to put the rents of the real estate, with his personal estate, at interest, until the son attained to his majority, and ordered them to educate him and support him until he came of age, and then limited the property over in case he should die having no children. It was held that the limitation over took effect only in the event of the son's dying childless before attaining to his majority. "There is nothing," said Chief-Justice Green, in delivering the opinion of the court of errors and appeals, "in the provisions of the will, aside from the particular clause in question, indicating an intent on the part of the testator to limit, or in any wise to qualify the estate given to his son after he should attain to the age of twenty-one years." He held that the devise over stood not in opposition to the original devise, but to the event of the legatee's coming into possession. And I consider it a very important circumstance in this case, that there is nothing in this will, aside from the provision in the tenth clause, to indicate any intention on the part of the testator to qualify the estate given to his children. To his son Samuel he gives certain shares of insurance stock, and to his four children he devises his woodland in such manner as, apart from the provision of the tenth section, to indicate an intention to make absolute gifts. In the ninth clause he gives the "balance" there mentioned to his children by language indicating a like intention. The juxtaposition of the language which, it is insisted, provides for the limitation over to the substitutionary provision in the ninth clause, leads strongly to the conviction that it was used in the same con-

nection and with the same view alone, and not to qualify the absolute estates or interests previously given to his children by reducing them in a certain contingency to mere life estates. In *Williamson* v. *Chamberlain, 2 Stock. 373*, a testator made specific devises and bequests to several of his children, and then gave a life estate to his wife in his real and personal property not specifically disposed of. He then declared that his real and personal estate, after the death of his wife, should, unless she chose to give them up before her death, be sold and divided among certain of his children, and then declared that if any of his children should die without lawful issue of the body begotten, then his, her or their share or legacy should be equally divided among the survivors, share and share alike. It was held that he used the term "survivors" with reference to the period when the estate should be divided, after the happening of the event mentioned in the will—the death of his wife. In that case, which, it will be seen, was very similar in its circumstances to this, one of the sons, having received his share, died without issue, and the suit was brought to recover the share which he had received. The chancellor (Williamson) held that it was the intention of the testator that when the son received his share, he should take it absolutely, and not in such a way as to create a limitation over after his death, in the event of his dying without issue. In *Wurts* v. *Page, 4 C. E. Gr. 365*, the testator gave his estate to trustees for the use of his eight children and the two children of his deceased daughter, and directed that the proceeds of it be invested for their benefit. He directed that the shares of his daughters should be held in trust for their sole use, not subject to the debts or control of their husbands, and that the annual income be paid on their own receipts; that a specified part of the principal should be paid to each on her marriage; that a specified part of the share of each son should be paid to him at twenty-one, and the residue at twenty-two, and that in case of the death of any child without issue, the share of such child should merge in the general fund. It was held with regard to the shares of the daughters that the gift was absolute, subject to be defeated by their dying without issue, at their death, and that as to the shares

of the sons the limitation over was to be construed to mean dying without issue before the share was payable. The chancellor (Zabriskie) followed the rule of construction laid down in *Pennington* v. *Van Houten*, but added that, irrespective of that rule, he should not have hesitated to hold that it was the intention of the testator that any share, which, by the terms of the will, was payable, should be the absolute property of the legatee, and not subject to the limitation over.

The view I have taken of the provision of the tenth clause, makes it unnecessary to consider the question raised by the defendant's counsel, whether the testator did not, in fact, die intestate, at least of the property the use of which was given to his wife for life—part of the homestead and the $4000. The bill will be dismissed, but without costs.