Baldwin v. Taylor.

room for doubt. *Id. 414; Flaacke* v. *Mayor &c. of Jersey City,* 1 *Stew. Eq.* 110, 115; *Rowley* v. *Flannelly,* 3 *Stew. Eq.* 612, 614.

PER CURIAM.

This decree unanimously affirmed, for the reasons given by Vice-Chancellor Bird.

JOSIAH L. BALDWIN et al., executors, appellants,

v.

JEROME TAYLOR et al., executors, respondents.

On appeal from a decree of the chancellor, whose opinion is reported in *Baldwin* v. *Taylor,* 10 *Stew. Eq.* 78.

*Mr. William S. Gummere,* for appellants.

The question for determination in this case is, Whether, upon the death of Samuel Baldwin (whose surviving executors are the appellants), his son, Harris M. Baldwin, took an absolute, indefeasible estate in the property given to him by the will of his father, or whether he took an estate which was divested by his dying without issue, leaving his two brothers surviving him.

By the terms of the will of their testator, it is their duty to divide this share of the testator's estate among the surviving children of the testator, upon the death of Harris M. Baldwin without issue.

The same objection was raised in the case of *Annin* v. *Van Doren,* 1 *McCart.* 135, and it was there decided that the executors of the testator were proper parties to bring suit against the administrator of a deceased daughter for the purpose of recovering the share of the testator's estate which had been bequeathed to such daughter, but had been limited over upon her death without issue. See, also, *Moffat* v. *Strong,* 10 *Johns.* 12.

The chancellor held, when the case was before him, that it clearly appeared from the language of the will, that it was the testator's intention that those of his children who survived him should take an absolute, indefeasible interest in the shares of his estate bequeathed to them respectively; and also that this was the effect which the rule of construction governing devises and bequests of the kind, gives to the language contained in the tenth section of the will.

But I submit that the language used by the testator in the will, and the facts and circumstances existing at the time it was made, show clearly that what caused the testator to add the tenth section to his will was the fact that his sons—Harris and Josiah—had no children, although Harris had been married for twenty years; that Josiah had never married, and that the probability was that neither of them would ever have issue; and his desire that his own flesh and blood, and not strangers, should enjoy the fruits of his labor.

And not only was it the intention of the testator that the estate given to his children by his will should be divested at their death, if they left issue, or a brother or a sister surviving them, but this is the effect which the rules of law give to the language used by him.

The only thing which throws any doubt whatever upon the meaning of the tenth section, is the fact that the testator, in it, uses a word of contingency in connection with an event which is absolutely certain, i. e., death. He says: "If any of them shall die, leaving heirs, their portion shall go to such heirs; if not [i. e., if any of them shall die not leaving heirs], it shall &c."

But the use of the word "if," in connection with death, has so often received judicial construction, and its meaning in the various classes of cases in which it has been so used has been so well settled, that it is no longer doubtful what effect the rules of law give to the language used by the testator.

In the case of *Edwards* v. *Edwards*, *15 Beav. 357*, Sir John Romilly, the master of the rolls, divides the cases in which death is spoken of as a contingent event, into four classes, as follows:

1. Cases where there is. a gift to A, and, if he shall die, then over.

2. Cases where there is a gift to A, and, if he shall die without issue, then over.

3. Cases where there is a gift to A, to take effect at a period subsequent to the death of the testator (as, for example, after the termination of a life-estate in the subject of the gift; or, when A reaches the age of twenty-one); and if A shall die, then over.

4. Cases where there is a gift to A, to take effect at a period subsequent to the death of the testator; and if A shall die without issue, then over.

[Two more classes of cases might, naturally, have been added to such a division, *i. e. :*

*A.* Cases where there is a gift to a class (as, for instance, the children of the testator), and if any one of the class shall die leaving issue, the share of the one so dying to go to such issue; but, if any one of the class shall die without issue, then the share of the one so dying to go to the survivors of the class.

*B.* The same as the above, except that the time when the gift to the class takes effect is postponed to a period subsequent to the death of the testator].

The master of the rolls, after making the above division into four classes of cases where death is spoken of as a contingent event, lays down the rule of construction which governs in each class, as follows:

*Rule 1.* The rule of construction governing in the first class of cases is, that if the devisee (or legatee) survives the testator, he takes the subject of the gift absolutely, and the limitation over is defeated.

The reason of this rule is, that the only possible contingency which the testator, in such a case, could have intended to provide against was the death of the devisee in his (testator's) own lifetime. *Home* v. *Pillans, 2 Myl. & K. 15; Hawkins on Wills 254.*

But this construction is only adopted *ex necessitate rei;* and courts are so unwilling to hold that the testator intended to provide for the event of himself surviving the objects of his bounty, that, *even in cases of this class,* they are quick to adopt another

construction whenever it is possible to do so. *2 Jarm. on Wills 665 (Rand. & Tal. ed. vol. 3) 611; Billings* v. *Sandom, 1 Br. Ch. 393; Nowlan* v. *Nelligan, 1 Br. Ch. 489; Douglass* v. *Chalmer, 2 Ves., Jr., 501.*

*Rule 2.* The rule of construction governing in the second class of cases, as laid down in *Edwards* v. *Edwards,* is, that the devisee (or legatee) takes a present vested interest in the subject of the gift, liable to be divested upon his dying without issue, no matter when the death occurs. In other words, that the contingency, in the mind of the testator, is not the time of death, but the condition of the devisee with respect to issue at death. *Forth* v. *Chapman, 1 P. Wms. 663; Smith* v. *Stewart, 4 De G. & Sm. 253; Moffatt's Exrs.* v. *Strong, 10 Johns. 12.*

And this is the established rule of construction in this state, in cases of this class. *Den* v. *Schenck, 3 Hal. 29; Hull* v. *Eddy, 2 Gr. 169; Seddell* v. *Wills, Spen. 223; Kennedy* v. *Kennedy, 5 Dutch. 185; Rowe's Exrs.* v. *White, 1 C. E. Gr. 411; Groves.* v. *Cox, 11 Vr. 40; Den* v. *Allaire, Spen. 6.*

And the only exception to the rule, in cases of this class, is where the testator couples with the original gift *an absolute power of disposal in express terms.* In such cases the limitation over is defeated if the devisee (or legatee) survives the testator. Such was the case of *Annin* v. *Van Doren, 1 McCart. 135.*

*Rule 3.* The rule of construction governing the third class of cases, as laid down in *Edwards* v. *Edwards,* is, that if the devisee (or legatee) lives until the event happens which gives him a right of possession or payment, *i. e.*, until the death of the tenant for life, or until he reaches the age of twenty-one, as the case may be, then he takes the subject of the gift absolutely, and the limitation over is defeated, but that, if he dies before his estate falls into possession, then, *even if he has survived the testator,* the limitation over takes effect.

And this is undoubtedly the true rule. *Girdlestone* v. *Doe,. 2 Sim. 225; Hervey* v. *McLaughlin, 1 Price 264; Beatty* v. *Montgomery, 6 C. E. Gr. 326; Hawkins on Wills 254, 255.*

And even if the gift vests at the death of the testator, it is. liable to be divested again by the death of the devisee (or lega--

Baldwin *v.* Taylor.

tee) before the time of possession or payment arrives. *Hervey* v. *McLaughlin, supra ; Beatty* v. *Montgomery, supra.*

*Rule 4.* The rule of construction governing the fourth class of cases, as laid down in *Edwards* v. *Edwards,* is, that if the devisee (or legatee) lives until the event happens which gives him a right of possession or payment, he takes absolutely, and the gift over is defeated, even if he should subsequently die without issue. In other words, that cases of the fourth class are governed by the rule of construction prevailing in cases of the third class, and not by the rule prevailing in the second class.

This fourth rule of construction, laid down in *Edwards* v. *Edwards,* was followed by the English courts, in cases of that class, from the date of the decision (1852) until the year 1874; and then the house of lords, in the cases of *O'Mahoney* v. *Bur-dette, L. R. (7 H. of L.) 388 ; Ingram* v. *Soutten, L. R. (7 H. of L.) 408* held that the fourth rule of construction laid down in *Edwards* v. *Edwards,* was unsound ; and that, in cases of that class, as well as in cases of the second class, the limitation over would take effect if the primary devisee (or legatee) should die without issue, no matter when the death occurred.

The rule in New Jersey, governing cases of this class, seems to be in a somewhat unsettled condition. *Pennington* v. *Van Houten, 4 Hal. Ch. 745 ; Williamson* v. *Chamberlain, 2 Stock. 375 ; Wurts's Exrs.* v. *Page, 4 C. E. Gr. 365,* follow the rule laid down in *Edwards* v. *Edwards,* while *Ackerman* v. *Vreeland, 1 McCart. 23 ; Drummond* v. *Drummond, 11 C. E. Gr. 234,* are decided in accordance with the rule laid down in the house of lords.

*Class A.* The fifth class of cases, which I have called class A, (*i. e.*, cases where there is a gift to a class [as, for instance, to the children of the testator], and if any one of the class shall die leaving issue, the share of the one dying to go to such issue ; but if any one of the class shall die without issue, then the share of the one so dying to go to the survivors of the class), is, at first blush, very similar in effect to the first class of cases mentioned in *Edwards* v. *Edwards ;* for it is just as certain that a person will die either with issue or without issue, as it is that he

will die at all; and therefore it may be argued with a good deal of force that, in ascertaining whether the devisees take an absolute, indefeasible estate, if they survive the testator, the double contingency should have the same effect as if the testator had used the expression "if he shall die," and that any other construction would cut down the original, absolute gift into an estate for life.

Consequently, in the cases of *Doe* v. *Sparrow*, *13 East 359*; *Clayton* v. *Lowe*, *5 Barn. & Ald. 636*; *Gee* v. *Manchester*, *17 Q. B. 737*, it was held that, if the devisees survived the testator, they took an absolute, indefeasible interest in the subject of the gift; in other words, that the *first rule of construction* laid down in *Edwards* v. *Edwards*, governed in devises and bequests of this character.

But it should be observed that in these cases the primary gift was of *an absolute estate in fee simple in express terms.*

On the other hand, in the cases of *Allen* v. *Farthing*, *2 Madd. 503*; *Cooper* v. *Cooper*, *1 Kay & J. 658*; *Gosling* v. *Townsend*, *17 Beav. 245*; (*affirmed by the lord chancellor and lords justices*, *2 W. R. 23*); *Gee* v. *Manchester*, *14 Jur. 825*; *Bowers* v. *Bowers*, *L. R. (5 Ch. App.) 244*, it was held that if a devisee died leaving issue, the issue took, and if he died without issue, the gift over took effect, no matter at what period the death occurred.

*Hawkins on Wills 258.* See, also, *3 Jarm. on Wills. (Rand. & Tal. ed.) 644.*

*Class B.* The sixth class of cases, which I have designated class B, is the same as the class above mentioned, except that the time of enjoyment is postponed until a period subsequent to the death of the testator.

It is not necessary to the decision of this case to ascertain whether the second or third rule of construction laid down in *Edwards* v. *Edwards*, governs in cases of this last class.

Hawkins considers cases of this class identical in principle with those which I have designated class A. See citation above.

In the cases of *Galland* v. *Leonard*, *1 Lev. 161*; *Da Costa* v. *Kier*, *3 Russ. 360*, the third rule of construction was adopted. But see the case of *Jones* v. *Stites*, *4 C. E. Gr. 324*.

The tenth section of the will now before the court is almost
identical with the language of the bequest in the case of *Bowers* v.
*Bowers,* and is governed by the rule adopted in cases of that
class. (Class A.) *Beatty* v. *Montgomery, 6 C. E. Gr. 325;
Pennington* v. *Van Houten, 1 Hal. Ch. 745; Wurts* v. *Page, 4
C. E. Gr. 365; Williamson* v. *Chamberlain, 2 Stock. 373.*

But the respondents insist, and his honor the chancellor was
of opinion, that the language of the will showed that the testator
intended that his children should take absolute, indefeasible
estates, in case they survived him; and it is said that this inten-
tion appears—

*First.* In the expression "among my surviving children,"
contained in the end of the tenth section , and

*Second.* In the fact that, by the ninth section of his will, the
testator, in the gift of his residuary estate to his children, evi-
dently provided for the event of any of them dying in his own
lifetime.

And, *first,* as to the expression "among my surviving chil-
dren," the respondents insist that the testator meant "among my
children who survive me," and his honor the chancellor so
decides on the strength of *Williamson* v. *Chamberlain, supra.*

But it is entirely settled in this state that the meaning of this
expression when used as in the tenth section, is "those children
of the testator who survive the one dying without issue." *Den*
v. *Allaire, Spen. 6; Seddell* v. *Wills, Spen. 223; Holcomb* v.
*Lake, 4 Zab. 686; Kennedy* v. *Kennedy, 5 Dutch. 185; Groves*
v. *Cox, 11 Vr. 40.*

*Second.* As to the fact that by the ninth section of his will,
the testator provided against the death of any of his children in
his own lifetime.

His honor the chancellor says that " the tenth section is
merely an extension of the substitutionary provision of the
ninth," and he so holds, because the tenth section immediately
follows this substitutionary provision.

This conclusion entirely overlooks two well-settled rules of
construction :

*First.* That if possible, some effect shall be given to each dis-

tinct provision of a will, rather than that any part thereof should be annihilated. *Chrystie* v. *Phyfe, 19 N. Y. 348;￼ O'Hara on Wills 33.*

*Second.* That courts will never construe a gift over to be a provision against a lapse, without they are driven to it *ex necessitate rei,* and that, if any other construction can be put upon the gift over, such construction will be adopted. *3 Jarm. on Wills (Rand. & Tul. ed.) 611; Home* v. *Pillans, 2 Myl. & K. 15; Cowley* v. *Knapp, 13 Vr. 297.*

*Mr. Barker Gummere,* for appellants.

The only questions before the court are: First. Did Harris M. Baldwin take an estate which became a fee simple in the lands devised to him, an interest which became absolute, and the moneys given to him by the will of his father, Samuel Baldwin, upon the death of the mother of Harris in his lifetime? Or; Second. Did Harris take an estate in said lands and an interest in said moneys, which, upon his death, leaving no children, was limited over and vested in the appellant by force of the executory devise contained in section 10 of said will?

I submit that this court has established the principles of construction which are to be applied to this case, in *Van Houten* v. *Pennington, 4 Hal. Ch. 745, 747.*

The case of *Williamson* v. *Chamberlain, 2 Stock. 373,* does not purport to dissent from *Van Houten* v. *Pennington;* in fact, does not mention that case—justification that there was in the will a future event prescribed, upon the happening of which the beneficiaries were to enter into possession. It does not impugn the principle that the apposition of the limitation to the devise itself is controlling, even if enjoyment is contingent upon such future event. *Ackerman* v. *Vreeland, 1 McCart. 23–25; Rowe* v. *White, 1 C. E. Gr. 411; Drummond* v. *Drummond, 11 C. E. Gr. 234; Wurts's Exr.* v. *Page, 4 C. E. Gr. 365, 374.*

So far, then, as the decisions of our equity courts are concerned, the authority of *Van Houten* v. *Pennington,* proclaimed by the court of errors and appeals, is absolute, and it has never

been questioned or unwillingly submitted to by any inferior tribunal.

The law courts have in repeated decisions, both before and since *Van Houten* v. *Pennington,* practically affirmed the principles of that case.  *Den* v. *Sayre, Penn. 598 ; Den* v. *Schenck, 3 Hal. 29 ; Den* v. *Snediker, 2 Gr. 53 ; Hall* v. *Eddy, Id. ; Den* v. *Allaire, Spen. 6 ; Kennedy* v. *Kennedy, 5 Dutch. 185 ; Holcomb* v. *Lake, 4 Zab. 686.*

And it is to be noticed that in *Seddel* v. *Wells, Spen. 223 ; Groves* v. *Cox, 12 Vr. 40, 44, 45,* an entirely independent clause of limitation was referred to the devise; and that in the latter case the limitation was so referred, notwithstanding the land devised embraced lands devised to the mother for life, and as to such land the limitation might have been referred to the period of her death.

It is submitted, then, that the following rules are established by the judgment in *Van Houten* v. *Pennington,* and are settled law in this state:

1. If land be devised to A in fee, and a subsequent clause in the will limit such land over to designated survivors in case A die without " heirs " or " issue " or " children," and A so die, and the survivors be *in esse* at his death, and if there be no other period or event expressed in the will to which the limitation over can be fairly referred, then A takes a vested fee, which is divested at his death and vested in fee in such survivors then *in esse.*

2. Even if there be periods or events expressed in the will to which the limitation over may be referable (*i. e.,* postponement of enjoyment by the devisee until arrival at full age or until the death of a life-tenant), the limitation will be referred to such period of enjoyment, or to the death of the devisee, according as the court may determine from the context of the will, that the limitation clause is in apposition to the period of enjoyment or to the devise itself.

I have only to add that my associate has demonstrated that the preponderating weight of English authority supports the construction of the will in this cause for which we have contended, and I submit that if this court determine to overrule

*Van Houten* v. *Pennington,* it will be by adopting the weighty arguments and conclusions of Lords Cairns, Hatherly and Selborne in *O' Mahoney* v. *Burdette, L. R. (7 H. of L.) 388 ; Ingram* v. *Soulter, Id. 408.*

. *Mr. C. S. Titsworth,* for respondents.

Testator died September, 1856. His widow and his four children, viz., ·Harris M., Josiah L., Samuel O. Baldwin, and Mrs. Mary Belcher, survived him. Mrs. Belcher died in 1866, leaving children. The widow occupied the whole farm until her death, in 1868. In December, 1871, the entire estate (including widow's allotment) having been sold and converted into money, was finally settled in the orphans court, leaving a balance in hands of executors of $96,253.51. " This sum was divided in January, 1872, equally among the four children or their heirs." " It was divided by mutual consent all round "—the guardian of Mrs. Belcher's children taking one equal fourth part. Harris M. Baldwin died childless, January, 1882. His brothers, the complainants and appellants, now claim that his estate should pay back to them, as surviving executors, the fourth part of " the balance " mentioned in the ninth section, so divided and paid to · him, basing their claim on the tenth section. The respondents, his executors, insist that by the true construction of this tenth section, he took his portion of this " balance " under the provisions of the ninth section, absolutely. The chancellor has so decreed, and we submit the decree is well grounded.

I. It is in accordance with testator's intention, as appears on examination of the will. By it the testator means to make, and does make, a full and complete disposition of all the residue of his estate, real and personal, and gives definite and particular directions to that end.

II. The decree is in harmony with sound principle and with the general current of authority.·

1. " The balance " is personal property. It is a settled rule in equity " that when lands are directed to be converted into money and the proceeds given as a legacy, it will be treated as a legacy

Baldwin v. Taylor.

of personal estate." *Scudder* v. *Van Arsdale, 2 Beas. 109; Wurts, Exr.* v. *Page, 4 C. E. Gr. 373; Herbert* v. *Tuthill, Sax. 141.*

2. The bequest is held to be absolute if made in such terms as to authorize the legatee to take possession and consume it or dispose of it in whole or in part. *Annin* v. *Vandoren, 1 McCart. 135; Armstrong* v. *Kent, 1 Zab. 509, 2 Hal. Ch. 637; Pickens* v. *Langdon, 22 Me. 413; Ramsdell* v. *Ramsdell, 21 Me. 288.*

3. "Or their heirs"—"my surviving children," substitutionary provisions. *Hawkins on Wills 92,* gives this rule: "A bequest of personal estate to 'A, or his heirs,' is construed as a gift by way of substitution to the heirs in the event of the death of A before the period of distribution." *3 Jarm. on Wills (Rand. & Tal. ed.) 588.*

4. The rule is well settled in the construction of wills containing similar provisions in which testator directs, first, a division or distribution of his estate equally among a class, and in a subsequent independent clause directs who shall take their shares if any of the class "shall die" with or without issue, and may be briefly stated as follows: Words indicating death leaving or not leaving issue, as the event on the occurrence of which the gift over is to take effect, must be construed to refer to the occurring of that event in the testator's lifetime or before the period of distribution, unless a contrary intention appears in the will. The following cases fully support the rule as thus stated: *Edwards* v. *Edwards, 15 Beav. 357; Beckton* v. *Barton, 27 Beav. 99; Slaney* v. *Slaney, 33 Beav. 631; Galland* v. *Leonard, 1 Swanst. 161; Besant* v. *Cox, L. R. (6 Ch. D.) 604; Olivant* v. *Wright, L. R. (1 Ch. D.) 346; Caldwell* v. *Skilton, 13 Pa. St. 152; Beatty* v. *Montgomery, 6 C. E. Gr. 324; Birney* v. *Richardson, 5 Dana (Ky.) 424; Umstead's Appeal, 60 Pa. St. 365; Home* v. *Pillans, 2 Myl. & K. 15; Clayton* v. *Lowe, 5 Barn. & Ald. 636; Ware* v. *Watson, 7 De G., M. & G. 248; Cherry* v. *Lingwood, L. R. (19 Ch. D.) 470; Estate of Biddle, 28 Pa. St. 59; Rewalt* v. *Ulrich, 23 Pa. St. 388; Herbert* v. *Tuthill, Sax. 141; Gee* v. *Mayor &c. of Manchester, 17 Q. B. 737; Pennington* v. *Van Houten, 4 Hal. Ch. 272; S. C., Id. 745; Denise* v. *Denise, 10*

*Stew. Eq. 163; Yawger* v. *Yawger, 10 Stew. Eq. 216; Barrell* v. *Barrell, 11 Stew. Eq. 60; Williamson* v. *Chamberlain, 2 Stock. 373; Wurts* v. *Page, 4 C. E. Gr. 373; Johnson* v. *Cope, 17 Beav. 561; Hawkins on Wills 258; 3 Jarm. on Wills 643.*

As to inserting omitted words, see *Van Houten* v. *Pennington, 4 Hal. Ch. 749,* in which the court suggested inserting the words " under twenty-one years of age" after "die." In *Nelson* v. *Combs, 3 Harr. 27,* the court supplied " under age and without lawful issue" after "die." See, also, *McMurtrie* v. *McMurtrie, 3 Gr. 276; Hawkins on Wills 2; 3 Jarm. on Wills 708, rule 19.*

In *Covenhoven* v. *Shaler, 2 Paige 122,* quoting, with approval, Lord Redesdale, in *Jesson* v. *Wright, 2 Bligh 56*—" It cannot at this day be argued that because a testator uses in one part of his will words having a clear meaning in law and in another part words inconsistent with the former, that the first words are overthrown."

*Mr. H. C. Pitney,* for respondents.

The testator, by the tenth paragraph of his will, properly construed, referred to the death of his children, either in his own lifetime, or, at the farthest, before the residue should be divided.

1. There is in the will no glimpse of an expectation on the part of the testator that the "portions" given to his children should go over to the survivors after they had once come to their possession and enjoyment.

2. The words of gift in the ninth clause are to be construed as applied to personalty only; and, so applied, are amply sufficient, standing alone, to create an absolute gift.

3. If the tenth section be construed as creating a limitation over after the life of the first taker, as contended for by complainants, instead of a substitutionary bequest, as contended for by defendants, then this absolute estate is at once cut down to a mere life estate, resulting in an inconsistency, which brings the case within the rule laid down in *3 Jarm. on Wills (Rand. & Tal. ed.) 643,* as follows: "Sometimes, however, it happens that a devise in fee simple is followed by alternative limitations

Baldwin *v.* Taylor.

over, which collectively provide for the event of the death of the devisee under all possible circumstances. In such a case, the words of contingency are read as applying exclusively to the happening of the event in the testator's lifetime, in order to avoid repugnancy, inasmuch as the alternative limitations, if not so qualified and restricted in construction, would reduce the prior devise in fee to an estate for life." And brings the case within *Clayton* v. *Lowe* and *Gee* v. *Manchester.*

4. The presumption is that if the testator had intended to create a mere life estate, he would have used direct words, apt for that purpose, and would not have adopted the awkward and roundabout phraseology found here. And he would have interposed a trustee, to prevent waste.

5. It is plain that the testator contemplated but one division of his estate, or rather that the persons who should take should be ascertained once for all, but whether the period of the ascertainment and division was at his death, or at the death of his widow, is not clear. If the former, then he died intestate as to the land and money set apart for the use of his wife.

6. Consider the inconveniences and inequalities which might result from the construction contended for by the complainants. If one of testator's children dies, leaving children, before one who dies leaving no children, the children of the predeceased child will take no share in the subdivision of the share of the child dying childless. *Liddel* v. *Wills, Spen. 223.* And in the case just put, the survivor or survivors would take a subshare of the deceased brother or sister's share, absolutely, while he would hold only a life-estate in his own original share. And if the two children who have had children—Samuel and Mary— should both die before Josiah and Harris, who had none, then the survivor of the two last named would take half of testator's estate, with no certainty that his grandchildren would ever receive one cent of it. Then consider the inconvenience of the condition of the beneficiaries under that will—in the actual possession and enjoyment of the estate, with unlimited power to dispose of it, but holding it all the time as trustees for others, they know not whom. A construction leading to such a result is not reasona-

ble, and well justifies the criticisms that have been made upon
it by the courts. See per Chief Justice Robertson, in *Binnie* v.
*Richardson*, and Sir Richard Malins, in *Besant* v. *Cox.*

7. The decided weight of authority is in favor of defendant's
view—that is, more judges and courts have taken that view of
similar wills than the other. Lord Hatherly, when Vice-Chan-
cellor Wood, attacked *Clayton* v. *Lowe*, in *Cooper* v. *Cooper*, *1
Kay & J.*, in deciding which he probably made a mistake. Sir
Richard Malins, in *Bowers* v. *Bowers*, *L. R. (8 Eq. Cas.) 283*,
went over all the cases except *Cooper* v. *Cooper*, which does not
seem to have been cited, and adhered to *Gee* v. *Manchester* and
the other cases in that line, in the court of chancery appeals,
declaring that he would disregard *Farthing* v. *Allen*, *2 Madd.
310*, if in his way, "in order that the law might be put on a
rational footing." But Lord Hatherly, in *L. R. (5 Ch. App.)*,
reversed Vice-Chancellor Malins, in *Bowers* v. *Bowers*, reiter-
ating his criticisms on *Clayton* v. *Lowe*, but adhering to *Edwards*
v. *Edwards*, which was precisely in accord with *Clayton* v. *Lowe*
and *Gee* v. *Manchester*. Lord Chief-Justice Gifford concurred
in the reversal of *Bowers* v. *Bowers*, on the ground that the vice-
chancellor had not "laid sufficient stress on the context.. He
has laid down a general principle and then proceeded upon it,
without sufficient regard to the expressed intention of the testa-
tor," and then proceeded to show that the language of the will
was quite different from that in the other cases cited. In the
first place, the first bequest is expressed to be with benefit
of survivorship, in case any should die without issue, and in
the second place, he directs that, in case of the death of any,
leaving children, then the share, whether original or accruing,
shall go to the children &c., showing, clearly, a contemplation
of more than one division. *O'Mahony* v. *Burdette* (1874) was
not a case of alternative limitations covering "the event of death
under all possible circumstances," and so does not cover the case
in hand. All the lords, in their judgments, recognized the dis-
position of the courts to construe bequests of personalty as abso-
lute, and their language is entirely consistent with our conten-
tion here. And so we find the English cases, since *O'Mahony* v.

*Burdette,* following *Clayton* v. *Lowe* and *Gee* v. *Manchester* and the English cases in the same line, notwithstanding the decision of the lords. The later cases are collected in Judge Titsworth's brief. I desire to call attention, particularly, to but one—*Olivant* v. *Wright, L. R. (1 Ch. Div.),* decided in 1875, the year following *O'Mahony* v. *Burdette,* by four of England's greatest judges—James, Mellish, Bramwell and Brett—sitting in the court of appeal. There, as here, was an estate for life, and afterward a devise and bequest of both personalty and realty as follows:

"And after his decease, to be divided amongst my five children, share and share alike; and if any of my children shall die without issue, then that child or children's share shall be divided, share and share alike, among the children then living; but if any of my children should die leaving issue, then that child (if only one) shall take its parent's share, and if more than one, to be equally divided among them, share and share alike."

It will be observed that the gift itself is there, as here, a mere direction to divide, without any words of perpetuity; yet all the judges agreed that it imported an absolute estate. Again, there, as here, the provision is for the contingency of "the death under all possible circumstances"—*i. e.,* both with or without issue. The case is as near a parallel to that before the court as often occurs, and the four judges who heard it on appeal agreed, each delivering judgment, in declaring that the children of testator living at the death of the tenant for life, took an absolute interest in their respective shares in the estate of the testator.

PER CURIAM.

This decree unanimously affirmed for the reasons given by the chancellor.