Drake v. Lanning.

HERBERT A. DRAKE, executor &c. of Mary Titus, deceased,.

v.

HENRIETTA LANNING.

1. A promise by one to make a particular testamentary disposition of property for the benefit of another, is unenforceable unless founded upon a sufficient consideration.

2. A cross-bill praying relief, based upon such a promise, stricken out because it fails to disclose such consideration.

Bill to foreclose. On motion to strike out combined answer and cross-bill.

*Mr. Herbert A. Drake*, for the motion.

*Mr. Horatio N. Barton* and *Mr. Aaron V. Dawes*, contra.

Drake *v.* Lanning.

Pitney, V. C.

This is a bill to foreclose a mortgage given by the defendant to the complainant's testatrix. The bill, besides setting out the bond and mortgage in the usual form, also states a variety of circumstances attending the giving of those instruments which, so far as they affect the questions now to be considered, will be referred to hereafter.

The answer admits the giving of the bond and mortgage, and that the mortgage debt has not been paid in money, and that the mortgagee died testate, and that complainant is her executor. It also admits most of the collateral facts set out in the bill.

The cross-bill sets up a parol agreement made by the testatrix by which she agreed to bequeath to the defendant the bond and mortgage held by the complainant, and also sufficient money to pay off a prior mortgage upon the same premises held by Mr. Hamill, and it prays that this agreement may be specifically performed by the complainant.

The complainant moves to strike out this pleading, assigning nineteen reasons in the notice of his motion, which I think may be condensed into two—*first,* that the effect of the contract set forth in the answer and cross-bill was to vary a written contract by parol; *second,* that the contract set up discloses no consideration, and is, therefore, held *nudum pactum,* or that, if there be any consideration, it is so small as not to justify this court in decreeing its performance.

The facts which are admitted by the pleadings are as follows: Complainant's testatrix and defendant were sisters, and, at the date of the bond and mortgage in question, were widows. The defendant's husband died in September, 1886, seized and possessed of a fertile and valuable farm of about one hundred and twenty-six acres, which are the premises comprised in complainant's mortgage, situate in Mercer county, upon which were large and valuable buildings. This farm, with its buildings, constituted the homestead upon which the defendant and her husband lived in his lifetime and at his death. They were subject to two mortgages held by the complainant's testatrix. The first was dated March 26th, 1863, and secured the sum of $4,300, but

which had been reduced to $3,800. The amount due on the second mortgage was about $7,900, making the amount due to complainant's testatrix, in the aggregate, between $11,000 and $12,000.

The defendant's husband left three sons, his heirs at law, and, by his will, gave his property to his children and widow, and authorized the executors to sell and convey his real estate. In the spring of 1887 the executors sold the personal property and stock upon the farm, and the defendant and the son, who had lived at home, made preparations for abandoning it. They did not, however, leave the actual possession of the farm.

By deed of assignment dated November 1st, 1887, but delivered on November 3d, 1887, complainant's testatrix assigned the bond and mortgage for $3,800 to Mr. Hamill. By deed of the same date, but acknowledged and delivered on the 3d of November, the executors of defendant's husband conveyed the mortgaged premises to the complainant's testatrix. The consideration expressed in it is $1, and in it is the following recital :

"The above premises are conveyed subject to a mortgage made by Absalom P. Lanning and wife to Mary Titus recorded in the Mercer County Clerk's Office in Vol. 0 of Mortgages page 229 and subsequently by Mary Titus assigned November 1st 1887 to Hugh H. Hamill, and this conveyance is made for the further purpose of extinguishing the mortgage on said premises made by said Absalom P. Lanning and wife to Mary Titus recorded in said Clerk's Office in Vol. 59 of Mortgages pages 73 &c. the principal of which last mentioned mortgage with interest thereon to this date amounting to the sum of seven thousand nine hundred and seventy dollars."

On the same day the complainant's testatrix conveyed the mortgaged premises to the defendant for the consideration of $8,000, subject to the first mortgage of $3,800, and received as security for the purchase money the bond and mortgage here in question, bearing date the 3d day of November, 1887, conditioned to pay the sum of $4,200 in three years from date, with interest, payable annually. The complainant's testatrix also, at the same time, paid to her sister, the defendant, the sum of $1,000 for the purpose, as alleged in the bill, of enabling her to restock the farm.

The complainant's testatrix died in November, 1889, over eighty years old, possessed of a fortune of about $40,000, and by her will bequeathed to the defendant only $500.

,The facts alleged in the answer and cross-bill relied upon as a defence, and which for the purposes of this motion must be taken to be true, are as follows: That complainant's testatrix, prior to and at the date of this transfer, assured the defendant that she never expected to collect any interest on her bond and mortgage unless she became in need of funds, and that the only reason she exacted a bond and mortgage from the defendant was in case she should ever become in need of funds she would have the interest on the mortgage; that the complainant's testatrix, in her lifetime, refused to receive any interest on the bond and mortgage; that she said she didn't want any interest from them, because she was not in need of money; that' after the death of defendant's husband the defendant and her son Thomas, who had lived and was living upon the farm at his father's death, had made up their minds to remove from the mortgaged premises, and Mrs. Titus, being informed of this determination, and being very desirous that the defendant should continue to live on the farm, agreed with the defendant that if the defendant would purchase the mortgaged premises and would procure some one to take the first mortgage for $3,800 and would give her a bond made by defendant for $4,200, to be secured by a mortgage on the premises, and if the defendant would 'agree to remain on the farm with her son Thomas, and if she would cultivate and operate the premises, then she (the complainant's testatrix) agreed upon her part to pay to this defendant $1,000 presently, out of which sum this defendant was to pay the back taxes upon the mortgaged premises, amounting to about $200; and the complainant's testatrix further promised and agreed that she would execute a will, wherein and whereby she would bequeath to the defendant the aforesaid bond and mortgage made by the defendant to complainant's testatrix, and also a sufficient legacy, out of which the defendant was to pay and discharge the first mortgage for $3,800, and in case the defendant should die before the complainant's testatrix all the above bequests were to go to her son Thomas C. Lanning; that

in pursuance of and relying upon that agreement the defendant did purchase the mortgaged premises, and did execute and deliver the bond and mortgage in question in accordance with it, and she also procured Mr. Hamill to take an assignment of the first mortgage, and did agree to remain on and operate the farm, and did remain thereon, and did in all things perform her part of the agreement; and that the complainant's testatrix, in pursuance of her agreement, paid to the defendant the sum of $1,000; and, further, that the defendant, in reliance upon that agreement, has, with her son Thomas, ever since continued to reside upon the mortgaged premises and to cultivate them, and that she has expended since the making of the agreement large sums of money upon the premises, in setting out thereon peach and apple orchards, in repairing and building fences and in manuring and fertilizing said mortgaged premises.

I will consider, first, the objection of want of consideration.

It is well settled that a sufficient consideration for a contract may consist of either a benefit to the promissor or a detriment to the promisee, or both combined.

Let us see if either can be found in this contract.

The fair inference from the facts as stated is, that this agreement to bequeath the bond and mortgage and moneys was cotemporaneous with, and part and parcel of, the arrangement which resulted in the conveyance of the farm to the defendant and the giving of the bond and mortgage.

There is no allegation that the complainant's testatrix received any benefit from the transaction, unless the receiving of the cash on the first mortgage from Mr. Hamill was such a benefit; but all that the defendant had to do with that transaction was to request Mr. Hamill to advance the money and take such assignment. There is no allegation that any bonus was paid to Mr. Hamill for so doing, or that the property was not ample security not only for that first mortgage, but also for the second mortgage here in question. The testatrix was a mere conduit of the title from the executors of Lanning to the defendant, and the result of the transaction was, that the complainant's claim against the property was

Drake *v.* Lanning.

reduced from nearly $12,000 down to $4,200, and that she received in cash $3,800, and paid out of it $1,000 to the defendant, leaving net cash received $2,800, which, added to the mortgage—$4,200—made $7,000 in place of nearly $12,000, showing a deduction of nearly $5,000 from testatrix's claim.

There is no allegation that the testatrix ever lived upon the premises, or expected so to do, or that she was to derive any personal benefit from the occupation of it by the defendant and her son Thomas; nor is there any allegation that the reason why the testatrix entered into the arrangement and stipulated for the continuing of the occupation by the defendant and her son was, that the value of the farm, as a security for the mortgages, was thereby increased, and no such inference can legitimately be drawn from the bare facts, and in the absence of any allegation of a deficiency in value of the premises to secure the amount originally due to the testatrix. On the contrary, the more probable inference would be, that the object of the testatrix was to confer a benefit upon her sister and furnish her a home in her declining years.

With regard to the detriment to the defendant, the single fact from which that can be inferred is this: "That she and her son Thomas had made up their minds to remove from the mortgaged premises," and that the testatrix was desirous that they should remain upon them, and that she, the defendant, agreed "to remain on the said farm with her son Thomas, and to cultivate and operate the premises." There is here no allegation that the defendant had in contemplation the engaging in any other business or occupation, or had within reach any other means of subsistence, or that she abandoned or lost any opportunity which she had to improve her condition, or that it was part of the agreement that the defendant should make any material improvements upon or additions to the farm or buildings or fences thereon. The contract was simply that she should continue to live upon the farm and cultivate it. Here, again, I cannot see that there is any inference to be drawn that such continuing to live upon the farm and cultivate it would be any detriment to

Drake *v.* Lanning.

the defendant. The presumption would be quite the other way —that it would be a benefit to her.

The allegation of the cross-bill is that the defendant, in reliance upon the agreement, has, with her son Thomas, continued to reside upon the mortgaged premises and to cultivate them, and that she has expended since the making of the aforesaid agreement large sums of money upon the said premises, in setting out thereon large peach and apple orchards, in repairing and building fences and in manuring and fertilizing the said mortgaged premises. There is no allegation that the net income of the farm has not been sufficient to meet these expenses, nor that the farm has not thereby been increased in value as much as the cost of these improvements, nor is there, as before remarked, any allegation that the premises are not worth the amount of the two mortgages upon them and more. And as the title to the premises is in the defendant, she, and not the complainant's testatrix, will receive all the benefit of these alleged improvements. But if it were otherwise and these improvements have been made at a loss to the defendant, still, as it was no part of the alleged contract between the testatrix and the defendant that the defendant should make any such improvements, it is difficult to see how any equity can be founded upon them, or that she can say that she made them in reliance upon and peformance of the agreement.

The law governing contracts of this class is well settled in this state. A man, or, as in this case, a woman, may enter into a binding contract to dispose by will, in a particular manner of the whole or any part of his property, real or personal. If the character of the contract or its subject-matter be such as requires it to be in writing, in order to satisfy the statute of frauds, it may, though made by parol, nevertheless, be enforced in this court on the score of part performance by the one party to the extent of irretrievably altering his position, so that it would be a fraud upon him to refuse the performance of the other part of the contract. But whether witnessed by a writing, or resting wholly in parol, like all other enforceable contracts, it must be founded on a sufficient consideration, either of benefit to the one

Drake *v.* Lanning.

party or of detriment to the other, or of both combined.   I can conceive of no ground upon reason or upon principle, and can find no authority for any exception in this respect, in favor of this class of contracts.   On the contrary, it seems to me that this fundamental rule should be observed and enforced with greater, rather than less, rigor in such cases.   To relax it, would be to open the door to the proving and establishing of wills made by parol, and in contradiction, it may be, of a written will executed with all the statutory formalities.   I concur in what is said by the annotator of the third American edition of *Fry Spec. Perf.* § *223:*

"Such a contract is regarded with suspicion, and will not be sustained, except upon the strongest evidence that it was founded upon a valuable consideration and was the deliberate act of the decedent."

I have examined every reported case of this class in this state, as well as those cited by counsel from other jurisdictions, and find in each a well-pleaded and proven consideration.   In *France v. France, 4 Halst. 650*—which, though not a case of a promise to give by will, is relied upon by the defendant—the allegation was that the defendant, who was the complainant's father, marked off to him a piece of the father's woodland, and agreed with the son that if he would go on it and clear and improve certain portions of it, the defendant would give him a deed for it; that complainant, in reliance on this promise, took possession and spent considerable sums of money over and above all the income which he received from the promises, in clearing and bringing into cultivation a portion of the land, building a house, barn, rail fence, stone wall, a road through the tract, and in planting fruit trees.   The chancellor said that these facts were proven, and decreed in the son's favor.   Here was a clear case of consideration by way of detriment to the promisee.   He spent more money on the land of his father, upon the strength of the promise, than the income that he received from it; and if the father had retained the title to the premises, he would have been benefited to that extent himself besides injuring his son.   The case does not help the defendant herein.

In *Johnson* v. *Hubbell, 2 Stock. 332,* the consideration was a conveyance of land by the son to his sister at the request of the father, who, in consideration of it, promised to dispose by will of his property in a particular manner and to the advantage of the son.

In *Van Dyne* v. *Vreeland, 3 Stock. 370; S. C., 1 Beas. 142,* the consideration was the loss by the complainant of the share which he would otherwise have received in his own father's estate, and his continued services for the defendant from his infancy until he was twenty-five years old. .See *3 Stock. 375, 379 (bottom), 380; 1 Beas. 150, 151.*

In *Davison* v. *Davison, 2 Beas 246,* the consideration was the services of the son rendered to the father on his farm for fifteen years, during which period the father was infirm and unable to take care of the farm or himself and needed the assistance of the son. See *page 249.*

In the last two cases there was a consideration of both benefit to the one and detriment to the other of the contracting parties.

In *Young* v. *Young, 18 Stew. Eq. 27,* a son expended large sums of his own money and that of his wife, who was the complainant, in improving the farm in dispute, by erecting upon it new buildings and fences and in repairing and enlarging those already upon it. See *pages 29, 30.* The chancellor held this to be a good consideration.

Here, again, the money was expended on the land of the promissor, and if he had been permitted to retain that land as against his promise, he would have received a benefit equal to the injury which the promisee would have suffered.

Other cases are relied upon by the defendant. *Coles* v. *Pilkinton, L. R. (19 Eq.) 174,* decided by Vice-Chancellor Malins, is distinguishable from this case. There the complainant, the promisee, was about to enter into a particular business at a particular place, and had made all her arrangements so to do, and was induced by the promise of the other party to give up and abandon that opportunity for going into business in order to take possession of the premises in question. It was decided, so far as related to the question of consideration, on the strength of the case of

*Loffus* v. *Maw, 3 Giff. 592; 8 Jur.* (*N. S.*) *607.* But, with great respect, I think that *Loffus* v. *Maw* did not go so far as *Coles* v. *Pilkinton.* In the earlier case the testator, when in advanced years and ill-health, induced the plaintiff, a niece, to reside with and continue valuable services to him on the faith of his representations that by so doing she would become entitled to the benefit of property for life at his death, and by codicil to his will, which was read over to her, trusts were created in her favor. The court held that the testator could not revoke the trust. There the consideration of the promise was valuable services rendered by the plaintiff to the testator. In *Coles* v. *Pilkinton* there were no benefits whatever to the promisor, and the only injury to the promisee was that she abandoned a project which she had for going into business. That feature of the case distinguishes it from the case in hand. But, in my judgment, it was a very slender ground upon which to base a decree. The whole case shows that the object of the deceased in that case, as here, was to confer a benefit upon the plaintiff, and that she accepted it as such, and having been decided by a judge who had the misfortune to be frequently reversed, even if it were in point, I doubt if I should feel justified in following him. The case is classified in the digests as one of an executed gift; the complainant was put in possession of the premises in question by the deceased in execution of a parol gift. On that ground, perhaps, it may be sustained.

*Hammersley* v. *DeBiel, 12 Cl. & F. 45,* relied upon by the defendant, was a case of contract between the father of an intended wife and her intended husband as to a marriage settlement, in which the father agreed to settle by will a sum of money upon his daughter and her children, and, in consideration of it, the intended husband settled a jointure upon his wife and married her. The action was brought by the issue of the marriage, and it was held that the father was bound to make good his promise. The principle stated by Lord Lyndhurst, in delivering judgment in the house of lords in that case, is this: " If a party holds out inducements to another to celebrate a marriage, and holds them out deliberately and plainly, and the other party consents, and

celebrates the marriage in consequence of them, if he had good reason to expect that it was intended that he should have the benefit of the proposal which was so held out, a court of equity will take care that he is not disappointed, and will give effect to the proposal." The head-note of the case is an extract from the opinion of Lord Cottenham in the same case when before him in chancery; and Lord Campbell, in delivering his concurring judgment in the house of lords (at *p. 88*), repeats that extract, as follows: "A representation made by one party for the purpose of influencing the conduct of the other party, and acted on by him, will, in general, be sufficient to entitle him to the assistance of this court for the purpose of realizing such representation," and adds: "Of course Lord Cottenham is here speaking of negotiations in reference to marriage; and if that were not to be considered as the doctrine of a court of equity, the most monstrous frauds would be committed."

Marriage has always been held to be a valuable consideration, and I think the principle stated by Lord Cottenham, standing alone, is liable to mislead.

The case of *Lobdell* v. *Lobdell, 36 N. Y. 327,* is undistinguishable in its main features from *France* v. *France, supra.* At *page 331* the court says: "The promise to convey, as found by the referee, was not a mere voluntary one, but was made upon a valuable consideration, emanating from a loss or disadvantage to the promisee."

Of the same character is *Freeman* v. *Freeman, 43 N. Y. 34.* At *page 39* the court says: "Expenditures made upon permanent improvements upon land of the owner, induced by his promise made to the party making the expenditure to give the land to such party, constitute, in equity, a consideration for the promisee."

My conclusion from this review of the authorities is, that the contract set out in the cross-bill in this case is void for want of any consideration.

This renders it unnecessary to consider whether the contract set up contradicts the bond, and, being by parol, is for that reason void.

I will advise an order that the cross-bill, and so much of the answer as sets out the contract in question, be stricken out, with costs.