This is a bill for specific performance of an alleged agreement between Hugo Ibach and Helen Ibach, and Otto Schneppendahl, father of the complainant. The complainant claims the rights of a natural child in the estate of Helen Ibach, and brings this action against her executors. In re Book, 90 N.J. Eq. 549 (atp. 552).
Complainant contends that the case is within the principles laid down in Van Dyne v. Vreeland, 11 N.J. Eq. 370, but the evidence in the instant case is entirely different. The learned vice-chancellor said, in his resume of the testimony in the VanDyne Case: *Page 40 
"The complainant has been greatly wronged. He has devoted the prime of his life to the service of the defendant Vreeland. He served him twenty-five years upon the faith of an agreement made at the solicitation of the defendant with the complainant's father, and for such services the complainant should be provided for at the defendant's death as his own son. He was deprived of a participation in his father's property upon the assurances of the defendant made to the father that he need make no provision for his son, because the defendant, in fulfillment of his agreement, would stand toward him in the place of his parent, and, as he had stipulated, would provide for him by will. He received the complainant into his family upon the terms of the agreement, and the services of the complainant were rendered and were accepted upon the expectation of that agreement being carried out in good faith. The defendant has repeatedly acknowledged his obligation to fulfill the agreement by making different wills from time to time in accordance with its provisions and the understanding of the parties. He has verbally renewed the agreement frequently with the complainant and induced him to continue his services, assuring him that the fulfillment of the agreement by him should be a reward to the complainant for his fidelity. For twenty-five years the defendant accepted the services of the complainant upon the understanding that the agreement was the basis of the relationship existing between them. Now, the defendant, for the sole purpose of defrauding the complainants, has fraudulently put out of his hands all of his property out of which he was to make the provision which he had stipulated to make by the agreement."
Another situation is presented by the facts in this case.
The complainant entered the home of Hugo and Helen Ibach as an orphan and lived with them until her marriage. She went there after the death of her parents and was reared and educated by the Ibachs. She was treated as a member of the family, secured an excellent home, and was the object of their tender consideration, attention and a beneficiary generally. There was no formal adoption, but this court may enforce *Page 41 
an agreement for informal adoption of a child where there is sufficient consideration to sustain it. Drake v. Lanning,49 N.J. Eq. 452. In this case, however, I find no consideration upon which the complainant can rely, which would warrant a decree in her favor against the executors of Helen Ibach. No fraud was practiced on the complainant, but her condition in life was improved by her transfer to the Ibach home. She married from there, and, significantly enough, gave the name of Anna Schneppendahl in obtaining the marriage license.
The testimony heard by me was very brief, and at its conclusion the defendant rested without tendering any proofs, and the bill was dismissed. A careful perusal of this evidence fails, to my mind, to reveal any agreement enforceable at this time against the executors of Helen Ibach. The right of the complainant must, of course, be clearly established to entitle her to the remedy now sought in her behalf. The consideration shown, and the generosity of the Ibachs to the complainant, and the surrounding circumstances generally, might lead a court to withhold specific performance at this time. It is true that an attempt was made to show an agreement on the part of Hugo Ibach, the husband of Helen Ibach, with Otto Schneppendahl, the father of the complainant, but I am not satisfied that the proofs offered establish it, although at the best it is simply between Hugo Ibach and the father of the complainant. There was no ratification by Helen Ibach. It rests largely on the testimony of a Mrs. Hill, who says that at the deathbed of the father of the complainant, about thirty years ago, she heard him say that if anything happened to him Mr. Ibach might have his child as his own, and that Mr. Ibach said he would gladly take her and she would be his own. Others testify to the pleasant home life of the complainant with the Ibachs and to their constituting a family group. Hugo Ibach predeceased his wife, and in his will he made no provision for the complainant, but left his entire estate to his widow, Helen Ibach. He made no mention in this will of any agreement, and upon the death of his widow, Helen Ibach, *Page 42 
she left a legacy to the complainant and to the complainant's child and made other bequests. It is quite apparent that she had no knowledge of the alleged agreement.
Complainant has been guilty of surprising delay and lack of diligence, unless an attempt is now being made to establish a false claim. She knew at the time of Hugo Ibach's death that he had made no provision for her in his will, or any mention of an alleged agreement, but now that both the Ibachs' lips are sealed in death, she institutes the present proceeding.
The bill should be dismissed.