# COURT OF ERRORS AND APPEALS

OF THE

## STATE OF NEW JERSEY

## ON APPEAL FROM THE COURT OF CHANCERY, AND THE PREROGATIVE COURT.

### MARCH TERM, 1919.

---

In the matter of the offering for probate of a certain paper-writing alleged to be the last will and testament of WILLIAM BOOK, deceased.

[Decided June 20th, 1919.]

A last will and testament, made when the testator has a living child adopted pursuant to the authority conferred by "An act concerning minors," &c. (*Comp. Stat. p. 2808*), is not void under section 20 of "An act concerning wills" (*Comp. Stat. p. 5865*), although no provision is made therein for a child of which his wife is *enceinte* at the time of his death, and which is born thereafter.

---

On appeal from an order of the prerogative court, reported in *89 N. J. Eq. 509.*

*Mr. Harry Campton* and *Mr. George D. Mulligan,* for the appellant.

*Mr. Thomas S. Henry* and *Mr. Francis Child,* for the respondent.

The opinion of the court was delivered by

GUMMERE, CHIEF-JUSTICE.

The present appeal challenges the validity of an order of the prerogative court which reversed an order made by the orphans court of Essex county, admitting to probate a certain paper-writing as the last will and testament of William Book, deceased.

The facts necessary for the determination of the matter before us are as follows: William Book and Annie, his wife, in April, 1908, adopted Frederick, the infant child of one William Feindt. The child's mother had previously died. The adoption was in accordance with the provisions of an act concerning minors, their adoption, custody and maintenance (*Rev. 1902; Comp. Stat. p. 2808*), which was then in force. In 1911, Annie Book, the mother by adoption of the infant child, died; and about a year later William Book married one Emma Goldman, who is still living. On the 25th day of May, 1915, Book executed the paper-writing involved in the present litigation. He died in January, 1917, leaving his wife *enceinte* of a child which was afterwards born. In due course the executors named in the will offered it for probate. By its terms, after providing for the payment of his debts and funeral expenses, the testator gave to his adopted son, Frederick, all of his jewelry, devised a certain house and lot to his wife, Emma, and then directed the residue of his estate, real and personal, to be divided into three equal parts, two of which he gave to his wife, and the third of which he directed to be held in trust for his adopted son until he reached the age of twenty-five, when he was to become the absolute owner thereof, providing he retained the name of Frederick Book. The adopted child, Frederick Book, by his next friend, filed a caveat against the probate, upon the sole ground that the will was void under section 20 of the act concerning wills. *Comp. Stat. p. 5865.*

The statute relied on declares:

"That every last will and testament made when the testator had no issue living, wherein any issue he might have is not provided for or mentioned, if at the time of his death he leave a child, children or issue, or leave his wife *enceinte* of a child or children which shall be born, such will shall be void, and such testator be deemed to die intestate."

The argument in support of the caveat was, and is, that the statutory provision recited makes a will void when the testator had no children born to him living at the time of its execution, nor any lineal descendants of such issue; and, consequently, that, as Frederick Book was not a child born to the testator, the statute applies.

The attitude assumed by the caveator is certainly an anomalous one. In one breath he asserts that at the time of the execution of the will the testator had no child living, within the meaning of section 20 of the Wills act, and in the next breath he justifies his filing of the caveat because of his status as a child of the testator, and his resulting right to participate in the distribution of the latter's personal estate, and to inherit his real estate if the will is void. Can he, under our statutes dealing with the subject-matter of our inquiry, successfully maintain these two apparently conflicting positions?

Section 20 of the Wills act became a part of that statute in December, 1824. *Elm. Dig. pp. 600, 601.* At that time a testator could have no lawful children except those born to him in wedlock. A child born to him of a woman who was not his wife was not recognized by the law as having any claim to share in the real or personal estate of the father. At that time, too, the laws of this state recognized no power existing in any of its citizens to adopt a child of other parents, and by the act of adoption vest in it the right to share in the distribution of the estate of the adopting party. In other words, the illegitimate child and the adopted child were neither of them recognized by our law as a lawful child of the actual or the adopting parent.

The act of 1902 providing for the adoption of minors was a revision of a statute originally enacted March 9th, 1877. *P. L. 1877 p. 123.* It materially changed the then existing law regulating the devolution of the estates of decedents. By its fourth section (which has remained unchanged by subsequent revision

or amendment) it provided that the effect of the decree of adoption should divest the natural parents of the child of all legal rights and obligations due from them to the child, or from the child to them, and that the adopting parent or parents should be invested with every legal right in respect to obedience and maintenance on the part of the child as if it had been born to them in lawful wedlock, and that the child should be invested with every legal right, privilege, obligation and relation in respect to education, maintenance, and the rights of inheritance to real estate, or to the distribution of personal estate on the death of such adopting parent or parents as if born to them in lawful wedlock; and that if the adopting parent or parents should have other child or children, then and in that case the children by birth and by adoption should respectively inherit from and through each other as if all had been children of the same parents born in lawful wedlock. The statute contains certain limitations which, however, have no bearing upon the question now under consideration, and which it is therefore not necessary to recite.

The effect of the legislation just adverted to is to clothe the adopted child with all the rights of a natural child so far as inheritance of real estate or the distribution of personal estate is concerned. It makes such child the lawful child of the adopting parent in these respects. It changes the statutory rules regulating the devolution of property, not by amending or repealing *pro tanto* the provisions of pertinent legislative enactments, but by enlarging the class for whose benefit they were originally passed (that is, the children born to the decedent and their issue), by making the adopted child a lawful child of the decedent for the purpose of sharing in the distribution of his estate.

The act concerning wills, the statute of descents and the statute of distribution composed the entire legislative system regulating the transmission of the estates of decedents, testate or intestate, prior to the passage of the act for the adoption of minor children. By the enactment of this latter statute that system, as we have just said, was, to some extent, changed. To determine the purpose of the legislature in making that change, and the extent thereof, all of these statutes must be read to-

gether; for it is a universally recognized rule of statutory construction that where there are different statutes *in pari materia*, though made at different times, and not referring to each other, they shall be taken and construed together as one system, and as explanatory of each other. *Sedgw. Stat. Con.* (*2d ed.*) *211; 26 Am. & Eng. Encycl.* (*2d ed.*) *620*, and cases cited; *White* v. *Hunt, 6 N. J. Law 506; Koch* v. *Vanderhoof, 49 N. J. Law 621; Gartney* v. *Cohen, 51 N. J. Law 127.* Applying this rule, we are of opinion that the legislative intent to be gathered from a reading of all these statutes was to vest in adopted children all the rights and privileges which, by the act concerning wills, the statute of descents, and the statute of distribution, had been conferred upon children born in wedlock; that is to say, to place them in the same position as if they had been natural born children of the decedent, so far as those statutes are concerned— to substitute the lawful children of the decedent, no matter what the source of their origin, in the place of those born of his body. To give this legislative purpose its full significance the meaning of the words "child," "children" and "issue," wherever appearing in the various statutes comprising the legislative system embodied therein, when used with relation to the testator or intestate, must be considered to have been enlarged so as to include adopted as well as natural born children within their scope.

The prerogative court adopted the view advanced by the caveator as to the construction to be given to the provision of the Wills act, which we have discussed, rather than that put upon it by the orphans court of Essex county. For the reasons we have indicated we conclude that the prerogative court in so doing was in error, and that, consequently, the order under review must be reversed.

*For affirmance*—None.

*For reversal*—The Chief-Justice, Swayze, Trenchard, Parker, Bergen, Minturn, Kalisch, Black, White, Heppenheimer, Williams, Taylor, Gardner—13.