Robert A. Keasbey, a resident of Essex county, died June 22d 1927. His will bears date October 15th, 1923. His widow and two of his sons, Aertsen and R. Quinton Keasbey, are living. His son, Keith W. Keasbey, resident of California, died June 4th, 1931, leaving a wife, who was living with him at his death, and an adopted child, Roy Waldemar Keasbey, infant, adopted under the laws of California, September *Page 226 
10th, 1924, approximately nine months after the execution of the will. The testator knew of the adoption.
The question is: Does the adopted child take under the will?
The legal status of the adopted child and his adopting parent, according to the California law, is:
"After the adoption, the two shall sustain towards each other the legal relation of parent and child, and have all the rights and be subject to all the duties of that relation." (Civil Code § 228.)
The status is entitled to full recognition in our courts. Inre Finkenzeller, 105 N.J. Eq. 44; affirmed, 107 N.J. Eq. 180.
The legal incidents of the status, with respect to local property, are determined by the laws of this state. Anderson v.French, 77 N.H. 509; 93 Atl. Rep. 1042. Were this a case of intestacy, and the adopting parent had predeceased his father, there could be no question that, under the established statutory system for the transfer of property upon death, the adopted child would take under our descent and distribution acts. Whart.Confl. L. (3d ed.) 568, says:
"There is * * * no doubt as to the general principle that the status acquired by adoption in a state or country having jurisdiction will be recognized both for the purpose of the descent of real, and the distribution of personal, property in other states or countries, at least in those whose laws provide for adoption."
That the property rights accorded the status are those bestowed by the statutory system is reflected in In re Book, 90 N.J. Eq. 549.
Chief-Justice Gummere says:
"We are of opinion that the legislative intent to be gathered from a reading of all these statutes was to vest in adopted children all the rights and privileges which, by the act concerning wills, the statute of descents, and the statute of distribution, had been conferred upon children born in wedlock; that is to say, to place them in the same position as if they had been natural born chlidren of the decedent, so far as these statutes are concerned — to substitute the lawful children of the decedent, no matter what *Page 227 
the source of their origin, in the place of those born of his body. To give this legislative purpose its full significance, the meaning of the words `child,' `children' and `issue,' wherever appearing in the various statutes comprising the legislative system embodied therein, when used with relation to the testator or intestate, must be considered to have been enlarged so as to include adopted as well as natural born children within their scope."
The medium of the inheritance may be a will. Where the testamentary intention is indefinite or obscure an adopted child may take under it if his status answers the description of the will. The statutory system supplies the intention; he takes by designation of the system. That was the situation in Haver v.Herder, 96 N.J. Eq. 554. There a parent devised a farm to his son for life, over to his "legal heirs." The son was survived by an adopted child, adopted after the testator's death. Vice-Chancellor Buchanan applied the legislative intent in formulating the rule that:
"Where a testator, by a will executed and probated during the existence of our statute as to adoption, devises property to a class designed as `heirs,' `lawful heirs,' or `legal heirs' (in cases where, prior to the statute of adoption, such words would have been held to mean `children' or `children and/or the children of deceased children') he must be deemed, in the absence of evidence to the contrary elsewhere in the will or surrounding circumstances, to have intended to include within such class children adopted pursuant to such statute, as well as natural born children or grandchildren."
The cases cited by the guardian ad litem of the adopted child are based on legislative intendment read into the will.Hartwell v. Tefft, 19 R.I. 644; 35 Atl. Rep. 882; Clark v.Clark, 76 N.H. 551; 85 Atl. Rep. 758; Batchelder v. Walworth,85 Vt. 322; 82 Atl. Rep. 7; Mooney v. Tolles (Conn.),149 Atl. Rep. 515. Ansonia National Bank v. Kunkel (Conn.),136 Atl. Rep. 588, turned up the ascertainment of testamentary intention from the will and the associated circumstances. Here there is no room for the legislative scheme; the testator had his own, and it is unmistakable. *Page 228 
The principal objects of the testator's bounty are his widow, his children and his grandchildren. The income is to be shared by his three sons with his widow during her lifetime and if any of the sons die in her lifetime leaving "lawful issue" the gift is to the sons' "children" whom the testator describes as "grandchildren." The gift of a one-fourth share of the principal is specifically to the testator's grandchildren. The testator's solicitude for his grandchildren, first, in substituting them in their parents' place, and then, by the direct gifts to them of a share of the residue, is the key to his intention that, when he gave the income to the "children" of his sons, dying leaving lawful issue, and willed that his grandchildren should have a share of the principal of his estate, he meant his sons' children begot, as in Genesis; those of his loins, the stock of which he was the ancestor and not children artificially created by law. The gifts were to follow his blood, but not beyond great grandchildren.
Under the statute of California the adopted child bore the relation of child to his adopting parent, but that did not make him a grandchild of the testator — kin to him.
The gifts of one of the shares of the principal of the estate, over to "issue" of a son dying leaving issue, allows of no distinction. By "issue" the testator, of course, meant lawful issue and having once, in the earlier part of the will, denominated lawful issue as the children of his sons and as his grandchildren (the legal definition of "issue" and "lawful issue" in the restricted sense), the same meaning will be given the same words in all parts of the will until a contrary intention appears.
Intrinsically, the will shows the testator's intention to limit his bounty to his kin, and the fact that the child was not adopted until after the execution of the will precludes an intent to include the child. It is suggested that, as the testator permitted his will to stand after hearing of the adoption, an inference arises that he intended that the child should take his adopting parents' place in the event of the latter's death. The inference is not permissible. The will speaks *Page 229 
the testamentary intention as of its date; its effect is as of the testator's death. Nor is the advice given to the testator by his attorney, after the will was made, that the adopted child would not take, admissible evidence of his intention. Farnum v.Pennsylvania Company for Insurance, c., 87 N.J. Eq. 108;affirmed, Ibid. 652. It is also a contention that it may be inferred that the testator realized the possibility of an adoption and also the legal consequences, and, hence, contemplated the possible inclusion of an adopted child as his son's substitute. The inferences are inadmissible. Adoption is an artificial method of acquiring an heir; it is the unexpected way. A child is nature's gift from above, normally anticipated. Further, the second inference, if otherwise legally allowable, is unsound; the testator cannot be presumed to have had knowledge of the California statutes and the rights that accrue thereunder to an adopted child. Then there is always a presumption of a testamentary leaning towards kinship. "Where one makes provision for his own `child or children,' by that designation he should be held to have included an adopted child, since he is under obligation in morals, if not in law, to make provision for such child. When, in a will, provision is made for a `child or children' of some other person than the testator, an adopted child is not included, unless other language in the will makes it clear that he was intended to be included. * * * In making a devise over from his own children to their `child or children' there is a presumption that the testator intended `child' or children of his own blood and did not intend his estate to go to a stranger to his blood. Blood relationship has always been recognized by the common law as a potent factor in testacy."Woodcock's Appeal, 103 Me. 214. The doctrine was approved and adopted in Ahlemeyer v. Miller, 102 N.J. Law 54; affirmed,103 N.J. Law 617. There, parents made a deed for land to their son and his wife, to the survivor for life and then to their children. The grantees later adopted a child. It was held that the adopted child did not take under the deed. Mr. Justice Minturn, after observing that, in the light of the fact that the adoption was after the deed, the *Page 230 
limitation over by a third party to the children or heirs-at-law was legally intelligible as not comprehending a stranger to the blood in default of lawful issue; and distinguishing between a court of equity's privilege of ascertaining the testator's intention from the will and the surrounding circumstances and a law court's limitation to an interpretation of the legal significance of a deed, he said, upon the authorities cited:
"The result reached is one of unanimity that a limitation in a deed or will to a child or children is not deemed to include an adopted child, where the grantor or testator is a stranger to the adoption. * * * The right of inheritance by the adopted child is a matter of statutory creation; the taking under a deed or a will depends upon the intention of the grantor, or testator, as revealed by the instrument itself construed in the light of the surrounding facts and conditions. Where the grantor or testator is the adopting parent it is reasonable to presume that the adopted child was within the intended bounty of such grantor or testator. But where he is a stranger to the adoption such presumption does not prevail. * * * The distinction * * * is clear."
See, also, 28 R.C.L. 252 and In re Leask, 197 N.Y. 193; 27L.R.A. (N.S.) 1158. The text does not preclude proof of the surrounding circumstances to establish intention to include an adopted child as in Mooney v. Tolles, supra; Ansonia NationalBank v. Kunkel, supra.
There is no conflict between Ahlmeyer v. Miller and Haver
v. Herder. One treats of presumptions that guide in the search for testamentary intention; the other, of the presumed concurrence by the testator in the legislative intent where he expresses no other.
The adopted child takes nothing under the will and the executor is so advised. *Page 231