Two appeals from a decree of distribution made by the Camden County Orphans Court in the estate of Caroline Fisler, deceased, are before me for decision. Both involve a construction of decedent's will. The third paragraph of that instrument, with which we are here primarily concerned, reads:
"I give and bequeath to the Provident Life and Trust Company now doing business at No. 409 Chestnut Street in the City of Philadelphia all of my stock of the United New Jersey Railroad and Canal Company in trust nevertheless to collect the income and dividends thereon and to pay the same (after paying all lawful taxes and assessments thereon) to my grandniece Eliza Mulford daughter of my *Page 312 
late nephew Jacob Mulford and now wife of Charles E. Keeler, in equal quarterly payments during the term of her natural life,and after her death the said shares to go to and be enjoyed bythe lawful issue of my said grandniece in equal parts share andshare alike, and if any of such issue be then deceased, leavinglawful issue, such issue to take their parents share, and in case she should die without leaving lawful issue the said stock to go to and be part of my residuary estate and be disposed of as hereinafter provided, and in case the said Eliza Mulford Keeler should die before me leaving lawful issue then I give and bequeath the said stock to such lawful issue share and share alike, and in case the said Eliza Mulford Keeler should die before me not leaving lawful issue then my will is that the said stock shall go to and be a part of my residuary estate to be disposed of as hereinafter provided." (Italics mine.)
The will was executed November 22d 1890. Testatrix died in October, 1903; her grandniece Eliza Mulford Keeler, life beneficiary in the trust created by the third paragraph, died May 6th, 1940. When Caroline Fisler made her will, one child, Alice Caroline Keeler, had been born to Eliza Mulford Keeler and was eight months of age. This great-grandniece (and apparent namesake) of the testatrix is specifically named in paragraph seven, where she is bequeathed the sum of $1,000 and its increment, to be paid to her upon attaining her majority. She and her brother Charles Wesley Keeler (born after the execution of the will) were the only children of Eliza Mulford Keeler. Alice Caroline Keeler married Charles M. Lorence, and pre-deceased her mother; no children were born to Mrs. Lorence but, on October 7th, 1926, she adopted Barnard Lorence under the provisions of the adoption Act of this state; Barnard Lorence survived Eliza Mulford Keeler and Alice Caroline Keeler-Lorence, his adoptive mother, and is one of those here prosecuting an appeal. Charles Wesley Keeler, the other appellant, has four children, Melissa Keeler Gohagan, Elizabeth M. Keeler, Alice C. Keeler and Jean C. Keeler; the latter three children are minors and appear by guardian ad litem.
The decree of the Camden County Orphans Court expressly excluded Barnard Lorence from any participation in the distribution of the trust estate, and directed that distribution be made to Charles Wesley Keeler and his four children, with equal shares to each. It is the contention of the appellant *Page 313 
Barnard Lorence that the language employed by testatrix in the questioned third paragraph, i.e., "if any of such issue be then deceased, leaving lawful issue, such issue to take their parents share," must be so construed as to entitle him to take the share of his adoptive parent. Charles Wesley Keeler maintains that his four children are not "lawful issue" of their grandmother, Eliza Mulford Keeler, and challenges the contention that Barnard Lorence may be justly considered "lawful issue" of Mrs. Lorence. Mr. Keeler insists that the will, properly construed, entitles him to receive the entire trust estate.
Let us consider, first, whether the four children of Charles Wesley Keeler should share equally with their father in any distribution of the trust estate. The answer to that question must be found, if possible, in the intent of the testatrix as expressed in the language chosen and employed by her in drafting her will and, in particular, in her use of the words "lawful issue of my said grandniece," in the third paragraph. Many reported decisions of this court and of the Court of Errors and Appeals may be found where the testamentary use of the word "issue" or the words "lawful issue" have been construed in instances where the gift was to issue of certain definite individuals, but the question here presented is novel, the gift over, after the death of the life beneficiary, being to a class (her "lawful issue") or, in substitution, to another class ("lawful issue" of deceased issue).
An early and leading case in which the word "issue" was construed is Weehawken Ferry Co. v. Sisson (Court of Errorsand Appeals), 17 N.J. Eq. 475. Chief-Justice Beasley there said, (at p. 485): "Standing uncontrolled by the context, the word `issue' is synonymous with descendants. Therefore, unless in some way limited in its sense, it embraces equally the son and his children." The clause construed in that case limited trusts declared in a deed and related to the disposition of property after the expiration of the life estate.
In Dennis v. Dennis, 86 N.J. Eq. 423; 99 Atl. Rep. 889, a decree advised by Vice-Chancellor Howell was affirmed by the Court of Errors and Appeals. In that, as in the instant case, the contest arose after the death of the life tenant and *Page 314 
between a father and his children; the clause there to be construed read: "at the death of each, the said two-thirds to be relieved from said trust and to go absolutely to the issue of the son so dying." Vice-Chancellor Howell said: "It seems to be well settled in this state that the word `issue,' which is so indefinite and capable of so many interpretations, in its first and primary sense, means descendants and comprises objects of every degree."
In Security Trust Co. v. Lovett, 78 N.J. Eq. 445;79 Atl. Rep. 616, Vice-Chancellor Leaming declared: "It is settled in this state that the word `issue,' in its ordinary meaning, embraces grandchildren and remoter descendants, as well as children, and that meaning must be attributed to the word when used in a will as here used, unless from the will it can be clearly ascertained that a more restricted meaning was intended by the testator. Unless so restricted it includes children of a living child."
Applying the rule to the instant case would result in a conclusion that Charles Wesley Keeler should share with his children in any final distribution of the trust estate. Such must be the interpretation of the will before me unless there can be found in the instrument something indicating that the testatrix intended no such result but, on the contrary, intended to make a stirpital distribution.
Let us examine the document. The word "issue" or the words "lawful issue" frequently appear. In the second paragraph testatrix gave the life benefits of certain corporate stock to a niece, Alice Broome, with remainder over to her daughter. This provision reads: "in case the said Alice should die before her mother leaving lawful issue living at the time of the death of her said mother then I give and bequeath the same to suchissue, if more than one, share and share alike, and in case the said Alice Broome should die before her mother without leavinglawful issue then my will is that the said stock after the death of my niece Emma D. Broome shall go to and be part of the residue of my estate * * *." The words "issue" and "lawful issue" in this paragraph were not qualified by the testatrix. (Italics mine; also mine in the following three paragraphs.) *Page 315 
In the fourth paragraph of the will, where the testatrix bequeathed her household furniture to her grandniece Eliza Mulford Keeler, she said: "and in case the said Eliza Mulford Keeler should die before me leaving lawful issue, I give the same to such issue and in case the said Eliza Mulford Keeler should die before me without leaving lawful issue the same to become and be part of the residue of my estate * * *." Again, the words "issue" and "lawful issue" are not qualified. The gift in this paragraph is to the same individual designated as life beneficiary in the third paragraph.
In the seventh paragraph, where the sum of $1,000 was set aside for Alice Caroline Keeler, testatrix said: "and in case my great grandniece Alice Caroline Keeler should die before she arrives at the age of twenty-one years leaving lawful issue then the same to go to and be paid to such issue and in case she should die before she arrives at the age of twenty-one years without leavinglawful issue then the same and all interest and accumulations thereon to go to and be part of the residue of my estate to be disposed of as hereinafter provided." In this paragraph the words in question are not qualified.
In two instances testatrix did add words which may be construed as words of qualification. In the third paragraph appear the words "and if any of such issue be then deceased leavinglawful issue, such issue to take their parents share." In the eighth paragraph, where the residue of the estate is given to five nieces and nephews and a grandnephew, share and share alike, are the same words, "such issue to take their parents share." Elsewhere in this latter paragraph the words "lawful issue" were used without qualification.
It has been contended in this case that unless the words "lawful issue," where they refer to the issue of Eliza Mulford Keeler in the third paragraph, are interpreted to mean her own immediate children, inequality will result in the distribution of the estate, and that therefore it would be unreasonable to suppose that testatrix used the words in their primary signification. It is the function of the court, in construing a will, to arrive at the testator's intention from what he said, *Page 316 
and, if necessary, from the surrounding circumstances; because it may seem more equitable, the court may not rewrite the will nor may it substitute a different plan for that expressed by the testator.
At this point it seems helpful to note that the will and the codicil of Caroline Fisler were witnessed by eminent and experienced counsel, Peter V. Voorhees; he also acted as the proctor in the administration of decedent's estate. Counsel have stipulated that he "undoubtedly" drafted the will. The circumstance that a will was drawn by experienced counsel has been frequently commented upon by our courts. In Apgar v.Hoffman, 113 N.J. Eq. 233; 166 Atl. Rep. 159, Vice-Ordinary Buchanan pointed out that the will before him had been drawn by a lawyer of long experience in practice and said: "Technical legal words in a will are to be given their technical legal meanings, * * *." See, also, comment of Chancellor Magie in Inglis v.McCook, 68 N.J. Eq. 27; 59 Atl. Rep. 630.
Now let us consider the effect of a testamentary use of the words "parents share" in connection with the word "issue." Vice-Chancellor Leaming, in Coyle v. Coyle, 73 N.J. Eq. 528;68 Atl. Rep. 224, had before him for interpretation this clause: "The residue of said proceeds to be divided equally, share and share alike, between my three children, John, James and Margaret, or such of them as shall survive my said wife, but if any of my said children shall have died, leaving lawful issue, such issue shall take the share their parent would have taken if living." John died before his mother leaving children and children of a deceased child. The question was whether the grandchildren (children of the deceased child) should take along with the children of John. Vice-Chancellor Leaming held (albeit reluctantly) that the grandchildren took nothing. He said: "In England it is a settled rule of construction that the word `issue,' when used in connection with the word `parent,' in the manner it is used in the will now under examination, will be understood as meaning children and excluding grandchildren." Chancellor Magie, in Inglis v. McCook, supra, said: "But when used in a will a more restricted meaning may be attributed if, from the *Page 317 
terms of the testamentary disposition, it clearly appears that the testator used the word [issue] in a particular meaning less general than its ordinary meaning."
In Pierson v. Jones, 108 N.J. Eq. 453; 155 Atl. Rep. 541,
Vice-Chancellor Berry cited and reviewed English and New Jersey authorities. He quoted with approval a statement by Vice-Chancellor Howell, in Dennis v. Dennis, supra: "`where a "parent" of issue is spoken of the word [issue] is prima facie
restricted to children of the parent.'" Vice-Chancellor Berry also said: "This rule has been uniformly recognized and applied in this state. It finds its foundation in the general rule that the intention of the testator must govern in the interpretation of wills."
Looking at paragraph three from a purely grammatical point of view the adjective clause "such issue to take their parents share" would modify and explain the noun "issue" to which it is attached and would not be construed as modifying the word "issue" where it first appears in the expression "the lawful issue of my said grandniece." The use by the testatrix of the words "issue" and "parents share" together, under our decisions, must be construed as having restricted the word "issue" to mean children. There is no reason to believe, however, that testatrix intended to carry that restriction back to limit the "issue" of her grandniece to children only.
A will bespeaks testamentary intention as of its date. That intention, if possible, should be ascertained from the will itself, but this does not preclude proof and an examination of the circumstances surrounding the execution of the will. Dulfon
v. Keasbey (Court of Chancery), 111 N.J. Eq. 223;162 Atl. Rep. 102. Testatrix made a direct gift to her great-grandniece, Alice Caroline Keeler, by name in paragraph seven. Nevertheless, in paragraph three of the will testatrix chose not to specifically name her; she was then eight months of age and the testatrix, self-evidently, had in mind the possibility or probability that other children might be born to her mother; the gift over, therefore, was made to the "lawful issue" of the mother. This is a further indication that the draftsman of her will chose and the testatrix intended *Page 318 
the words "lawful issue" to be construed without qualification and in their technical sense as declared by the courts.
My examination of this will in the light of the rules of construction declared in the cases I have cited, convinces me that the four children of Charles Wesley Keeler are entitled to share with their father as "lawful issue" of Eliza Mulford Keeler.
The question posed for the court as to the status of Barnard Lorence, under the law and the provisions of this will, is not a simple one. Not only have facts and circumstances present in the instant case not been considered and passed upon by the courts of this state, but confusion exists as to rules laid down to assist in the interpretation of wills in cases where claims are made by adoptive children and the intent of the testator does not clearly appear in the instrument. Counsel for Barnard Lorence contended in the Orphans Court and contends here that the testatrix must be presumed, under the rule formulated by Vice-Chancellor Buchanan and stated in Haver v. Herder (post), to have intended to include this adoptive child as surviving "lawful issue" of Alice Caroline Keeler-Lorence, no evidence of a contrary intent appearing elsewhere in the will or the surrounding circumstances. Counsel for the other parties to the cause insisted in the Orphans Court and here insist that the rule laid down by the same Vice-Chancellor in Fidelity Union Trust Co. v. Hall (post), must be applied and this adoptive child excluded as a beneficiary under the will of Caroline Fisler, a stranger to the adoption proceedings, there being no other evidence in the instrument or the surrounding circumstances sufficient to show an intent by the testatrix that he should take.
"The paramount rule for the construction of testamentary instruments is that the court must strive to ascertain the intention of the testator as expressed by the words of the instrument. Such intention, if so ascertainable, will prevail over technical rules and will disregard the common, ordinary meanings of words and adopt such meaning as can be deduced from the testator's intention. This has long been the settled rule in England and America and needs no citation of authorities for its support." Vice-Chancellor Howell, Stout v. Cook (post). *Page 319 
It has been argued that the will demonstrates the primary interest of this unmarried woman to have been to directly benefit certain known and favorite blood relatives, and that, after these had been provided for, testatrix had in mind only that those should take who would take by statute from such named relatives if the latter were to die intestate. This argument is based upon the fact that testatrix specifically named her grandniece, Eliza Mulford Keeler, and the daughter of the latter, Alice Caroline Keeler, in her will and included the latter as one of a class (surviving lawful issue of their mother) to take after their mother's death. It may be that Caroline Fisler would have wished a surviving adoptive child of her great-grandniece and namesake to take in substitution for his parent, and it may well be that, had Caroline Fisler lived to know of the adoption, she would have altered her will and clearly expressed such an intention. I am not at liberty, however, because an event has happened which I think has not been provided for, to conjecture what the testatrix would have provided had she conceived of the possibility of the event coming to pass. So, in effect, observed Lord Halsbury, inInderwick v. Tatchell (1903), A.C. 120; 72 L.J. Ch. 393.
In the present case but little help may be obtained from a reading of the will. No clear intent to include or to exclude adoptive children, as "lawful issue" of lawful issue of Eliza Mulford Keeler, is manifest. Only in the phrase "such issue to take their parents share" may possible intent be discerned and then only by resorting to a rule of construction. As I have already shown, the intent to be implied from this use of the words "parents share" in connection with the word "issue" is against a taking by an adoptive child. Some confirmation of such an intent may be found in the fact that these words were "undoubtedly" chosen by Peter V. Voorhees, Esquire; at the time this will was being drafted numerous decisions were already in the reports declaring that the ordinary signification of the word "issue" was modified and limited when the words "to take their parents share" were added; our New Jersey courts had not, at that time, been called upon to construe the Adoption Act of 1877 and it, on *Page 320 
its face, indicated only a legislative purpose to permit a child by adoption to inherit, or to take under the statute of distribution, from an adoptive parent. However, it is not necessary that this decision be grounded solely on a testamentary intent, so ascertained.
The artificial relationship of adoption, as we know it, with its concomitant rights and responsibilities, exists solely by permission and authority of statute; no power to adopt was recognized by the common law. In New Jersey the first adoption statute was enacted March 9th, 1877. (Chapter 83, P.L. 1877 p.123.) Section 4 has never been materially changed. It was re-enacted in the Revision of 1902 (Chapter 92, P.L. 1902 p.259) and in the Revision of 1937 (R.S. 9:3-9). It read:
"and the [adopted] child or children shall be invested with every legal right, privilege, obligation, and relation in respect to education, maintenance and the rights of inheritance to real estate, or to the distribution of personal estate on the death of such adopting parent or parents as if born to them in lawful wedlock; provided, always, and said child or children shall not be capable of taking property expressly limited to the heirs of the body of the adopting parent or parents, nor property coming from the collateral kindred of such adopting parent or parents by right of representation; * * *."
Sixty-five years have passed since the adoption of the act of 1877. Nevertheless, only eleven cases have been decided and reported where the right of an adopted child to take property by virtue of the statute, or by will, was involved. In not one of these cases was the court called upon to consider the right of an adopted child to take as surviving "lawful issue," of and in substitution for its adoptive parent where such parent was, in turn, one of a class designated to take as surviving "lawful issue" of a life beneficiary. Nor, has our Court of Errors and Appeals as yet been called upon to directly consider and settle the right of an adoptive child to take property under the will of a stranger to the adoption proceedings. The eleven cases are:Stout v. Cook, 77 N.J. Eq. 153; 75 Atl. Rep. 583; 79 N.J. Eq. 573; 81 Atl. Rep. 821; 79 N.J. Eq. 640; 81 Atl. Rep. 824; In reBook, 89 N.J. Eq. 509; 105 Atl. Rep. 878; 90 N.J. Eq. 549; 107 *Page 321 Atl. Rep. 435; In re Alter, 92 N.J. Eq. 415; 112 Atl. Rep. 483;Haver v. Herder, 96 N.J. Eq. 554; 126 Atl. Rep. 661; Dulfon v.Keasbey, supra; Smallwood v. Smallwood, 121 N.J. Eq. 126;186 Atl. Rep. 775; Trenton Trust Co. v. Gane, 125 N.J. Eq. 389;6 Atl. Rep. 2d 112; 126 N.J. Eq. 273; 8 Atl. Rep. 2d708; Fidelity Union Trust Co. v. Hall, 125 N.J. Eq. 419;6 Atl. Rep. 2d 124; Jackson v. Beal, 127 N.J. Eq. 156;11 Atl. Rep. 2d 750; In re McEwan, 128 N.J. Eq. 140;15 Atl. Rep. 2d 340; and, Ahlemeyer v. Miller, 102 N.J. Law 54;131 Atl. Rep. 54; 103 N.J. Law 617; 137 Atl. Rep. 543.
The first case to come before any of our New Jersey courts requiring an interpretation of the particular provision of the adoption statute which I have quoted, was Stout v. Cook, decided February 11th, 1910. In deciding that case Vice-Chancellor Howell stated a rule of testamentary interpretation: "In other words, such adopted child may inherit from the foster parent, but the adoption shall not operate tocreate a capacity to take as a child under the will of some otherperson." (Italics mine.) The decree advised by Vice-Chancellor Howell excluded an adopted daughter of a son of the testator from any participation in the distribution under the will before the court; however, at the time of the execution of the will the adoption statute of 1877 had not been enacted. While Vice-Chancellor Howell did not cite or mention the decision Inre Woodcock, 103 Me. 214; 68 Atl. Rep. 821; 125 A.S.R. 291,
which had been rendered November 26th, 1907, by the Supreme Judicial Court of Maine, the rule he formulated was in accord with the rule stated in that case. The decision in the WoodcockCase has been widely cited and has found a place in the New Jersey decisions.
Section 4 of our adoption statute is almost identical with the corresponding provision in effect in Maine when the WoodcockCase was decided. The presumptions to be recognized and applied in construing wills, where adopted children were concerned, were clearly stated in the Maine decision. The court said: "Where one makes provision for his own `child or children,' by that designation, he should be held to have included an adopted child, since he is under obligation *Page 322 
in morals, if not in law, to make provision for such child * * *.When in a will provision is made for `a child or children' ofsome other person than the testator, an adopted child is notincluded, unless other language in the will makes it clear thathe was intended to be included, * * *. Blood relationship has always been recognized by the common law as a potent factor in testacy." (Italics mine.)
In re Book, involved statutory rather than testamentary construction; In re Alter, concerned the right of an adopted child to take from the adopting parent.
The next New Jersey case in point was Haver v. Herder,supra. The will to be construed was the will of a stranger to the adoption; the adoption took place two years after the death of the testator. The devise was to a son for life and if, at the time of the son's death he "`should leave any legal heirs,'" then to them. The son had no children born to him but he adopted a daughter, who survived him. The contest was between this adopted child and other heirs of the adoptive parent. Vice-Chancellor Buchanan reviewed the provisions of the will and concluded that the available evidence left the testator's intent as to the possible inclusion of an adopted child entirely uncertain, necessitating the adoption of a rule of construction. The rule formulated and stated was: "That where a testator, by a willexecuted and probated during the existence of our statute as toadoption, devises property to a class designated as `heirs,'`lawful heirs' or `legal heirs' (in cases where, prior to the statute of adoption, such words would have been held to mean `children' or `children and/or the children of deceased children'), he must be deemed, in the absence of evidence to thecontrary elsewhere in the will or surrounding circumstances, tohave intended to include within such class children adoptedpursuant to such statute, as well as natural-born children orgrandchildren." (Italics mine.) The Vice-Chancellor continued: "Either this rule or its opposite must needs be adopted, and the adoption of the rule as above stated, rather than its opposite, in my view, is in accord with both the spirit of the legislative policy (as indicated in the adoption statute) and the spirit of the judicial pronouncement in the Book Case, supra." *Page 323 
When one considers that Vice-Chancellor Buchanan's rule was formulated to interpret the will of a stranger to an adoption proceeding which had occurred after the death of the testator, one is immediately struck by the seeming conflict between this rule and that stated by Vice-Chancellor Howell and the Supreme Judicial Court of Maine. The rule declared in Haver v. Herder
is a general rule, the wording and phraseology employed indicating that it is to be applied not only when the will is that of an adopting parent but also when it is the will of a stranger to the adoption. This decision has not been passed upon by the Court of Errors and Appeals.
In Dulfon v. Keasbey, supra, Vice-Chancellor Backes had occasion to construe a will containing the exact words employed by Caroline Fisler, "lawful issue." However, the facts of that case were not as they are here. Testator died in 1927; his will was executed in 1923; he was survived by a widow and three sons; one son died in 1931 leaving a wife and a child adopted under the laws of the State of California in 1924. The testator knew of the adoption. Vice-Chancellor Backes said: "Where the testamentary intention is indefinite or obscure an adopted child may take under it if his status answers the description of the will. The statutory system supplies the intention; he takes by designation of the system. That was the situation in Haver v. Herder,96 N.J. Eq. 554." The Vice-Chancellor then quoted the rule formulated by Vice-Chancellor Buchanan in Haver v. Herder and added: "Here there is no room for the legislative scheme; the testator had his own, and it is unmistakable." However, Vice-Chancellor Backes then quoted the rule as I have quoted it from In re Woodcock, and said: "The doctrine was approved and adopted in Ahlemeyer v. Miller, 102 N.J. Law 54; affirmed,103 N.J. Law 617." He then quoted from the Supreme Court opinion in the Ahlemeyer Case: "`The result reached is one of unanimity that a limitation in a deed or will to a child or children isnot deemed to include an adopted child, where the grantor ortestator is a stranger to the adoption. * * * The right of inheritance by the adopted child is a matter of statutory creation; the taking under a deed or a will depends upon the intention of the grantor, or testator, as revealed by *Page 324 
the instrument itself construed in the light of the surrounding facts and conditions. Where the grantor or testator is the adopting parent it is reasonable to presume that the adopted child was within the intended bounty of such grantor or testator. But where he is a stranger to the adoption such presumption does not prevail. * * * The distinction * * * is clear.' * * * There is no conflict between Ahlemeyer v. Miller and Haver v.Herder. One treats of presumptions that guide in the search for testamentary intention; the other, of the presumed concurrence by the testator in the legislative intent where he expresses no other." (Italics mine.) The decree advised excluded the adopted child from taking under the will.
Ahlemeyer v. Miller was an action of ejectment and the matter came before the Supreme Court on a motion to strike the complaint. The words there to be construed, as affecting the right of an adopted child to take, were "child or children," "heirs at law," and "issue;" these words were contained in a written limitation, a part of a deed of conveyance. The opinion in the Supreme Court was delivered by Mr. Justice Minturn, who, notwithstanding the fact that the case before him involved only the construction of a deed, discussed the interpretation to be put upon the words in question if and when they were used in a will, and, citing Wilder v. Wilder, 116 Me. 389;102 Atl. Rep. 110; L.R.A. (1918 B) 119, and many other cases, concluded with the words above quoted by Vice-Chancellor Backes. Thus, Mr. Justice Minturn, in effect, approved the rule laid down In reWoodcock; on appeal, his decision was affirmed, the Court of Errors and Appeals after discussing matters of practice in ejectment suits, saying: "We are entirely in accord with the views expressed by the learned trial judge, in his opinion, upon the merits of the case."
Smallwood v. Smallwood involved only the right of an adopted child to take from the adopting parent.
This brings us to a consideration of the other cases decided by Vice-Chancellor Buchanan, subsequent to Haver v. Herder. The first is Trenton Trust Co. v. Gane. The gift was of personal property to a son for life, then over to his "surviving *Page 325 
lawful heirs." Vice-Chancellor Buchanan cited many cases as authority for the following statement: "It is definitely settled that where the gift is of personalty, as here, the testator is deemed to have meant by the words `lawful heirs,' those persons who would take under the statute of distribution — unless there be evidence sufficient to indicate a different intention." On this theory the Vice-Chancellor held that the adopted child took under the will, and said: "The determination in the instant case does not in anywise depend on the rule of construction adopted inHaver v. Herder, 96 N.J. Eq. 554. In that case it was held that even in a case where testator gives to a class designated as `heirs,' `lawful heirs' or `legal heirs,' of a person other than himself, under circumstances such that prior to the statute of adoption those words would have been held to mean `children' or `grandchildren,' he will be deemed — in the absence ofindications to the contrary — to have intended to include adopted children within that class. It would follow, of course, that the same rule would govern if the class of legatees was designated by the actual word `children,' instead of by words meaning `children.' This rule of construction is not contradicted by Ahlemeyer v. Meyer [Miller], 102 N.J. Law 54; affirmed,103 N.J. Law 617, nor by Dulfon v. Keasbey, 111 N.J. Eq. 223,
nor by Stout v. Cook, 77 N.J. Eq. 153, cited on behalf of the other children of testator. The Ahlemeyer Case holds thatthe fact that the donor was a stranger to the adoption,constituted an effective `indication to the contrary,' [the immediately preceding italics mine] (especially where the gift was by deed); in the Dulfon Case it was held that the language of the will as a whole effectively evinced an `indication to the contrary;' and in the Stout Case it was held that the fact that there was no adoption act in force at the date of execution of the will constituted an effective `indication to the contrary.' But the rule of construction adopted in Haver v. Herder has no application in the instant case, because here the testator has not used the word `children,' or the words meaning `children;' he has used `statutory distributees,' i.e., words meaning `statutory distributees.' If he HAD used the word `children'or words meaning children, in *Page 326 all probability Mrs. Harloff would be excluded, under thedecision in the Ahlemeyer Case — because testator was a strangerto the adoption. [Italics, except the word "had," again mine.] Confusion tends to arise from the fact that the actual words used by testator were the same in Haver v. Herder, supra, as in the instant case — `lawful heirs' or `legal heirs.' To avoid this confusion it must be kept in mind that the words were used in utterly different meanings in the two cases; it must be kept in mind that, in legal contemplation, the words used in the HaverCase were `children,' and the words used in the instant case were `statutory distributees.'"
The second case is Fidelity Union Trust Co. v. Hall. The word to be construed was "issue." There was a conveyance to a trustee, the grantor to take the income for her life and the remainder to be then distributed as provided in her will. At the death of the grantor her will was probated and an interpretation sought. Vice-Chancellor Buchanan held that the corpus passed by the deed, not by the will, and that the adopted child took nothing under a bequest to "grandchildren," nor under an alternate bequest to "issue" of decedent's children. TheVice-Chancellor pointed out that the adoption occurred after thewill had been made and that the testatrix was a stranger to theadoption proceedings. He said: "The will (and as a matter of fact the trust deed also) was executed prior to the adoption, and by a stranger to the adoption. Under these circumstances, anadopted child of a child of the testator (or grantor) doesnot take under a gift to `grandchildren' of the testator (orgrantor) — unless there be other evidence in the instrument orthe surrounding circumstances sufficient to show an intent by thetestator that he should take. [Italics mine.] Ahlemeyer v.Miller, 102 N.J. Law 54; 131 Atl. Rep. 54; affirmed,
[*]103 N.J. Law 617; 137 Atl. Rep. 543; Dulfon v. Keasbey, 111 N.J. Eq. 223;162 Atl. Rep. 102; and Cf. Haver v. Herder, 96 N.J. Eq. 554
(at p. 558); 126 Atl. Rep. 661.
"The same thing is true where the gift is to the `issue' of the child of testator or grantor. In the Dulfon Case, the gift was to `issue;' in the Ahlemeyer Case, the gift was to `children.'" *Page 327 
 Jackson v. Beal, turned upon the limitation in the statute declaring adopted children incapable of taking property coming from the collateral kindred of the adopting parents or parents by right of representation.
In re McEwan, is the most recent of the eleven decisions. The decree was advised by Vice-Ordinary Bigelow who was called upon to determine whether or not adopted children took under the residuary clause of a will directing that if any child of the testator should predecease him leaving issue, then the child or children of such child should take the parents share. The Vice-Ordinary said: "It will be observed the question is one of construction of the will, not interpretation of the statute. The statute enters into the problem only as one of the circumstances surrounding the testator which may aid us in reading his mind. There are a considerable number of cases in our own reports and the reports of other states which deal with the claims of adopted children under wills. From them may be deduced that when a willcontains a provision for the testator's own `children,' a childadopted by him either before or after making the will is presumedto be within the class so described since the testator is underan obligation to regard the relationship as that of parent andchild." "The courts of most of our sister states held that when awill contains a provision for the `children' of a person otherthan testator and that person adopts a child after the will ismade, the adopted child does not take. For the testator is underno obligation to the child and is not supposed to have foreseenthe adoption." (Italics mine.)
Vice-Ordinary Bigelow then concluded that the adopted children were entitled to share in the residuary estate, the testator having known that his son had taken these children into his home and adopted them and given them his name.
In stating his rule in Haver v. Herder, Vice-Chancellor Buchanan added that he had not included the word "issue," because that might, perhaps, fairly be taken to mean "heirs of the body," under the express exception provided by the statute. Vice-Ordinary Bigelow, discussing this reservation on the part of Vice-Chancellor Buchanan, said: "Undoubtedly the decision inHaver v. Herder would have been the same *Page 328 
if testator had used the word `children' instead of `heirs,' or if he had written `issue,' except for the doubt arising from the proviso in the Adoption Act. I have concluded that the provisodoes not justify excluding adopted children from a classdescribed as `issue.'" (Italics mine.)
In passing, it may be noted that Vice-Ordinary Bigelow, in theMcEwan Case, disposed of a contention agitated again in the instant case: "I am satisfied that the clause in R.S. 9:3-9
which pronounces an adopted child incapable of taking property expressly limited to the heirs of the body of the adopting parent, should be technically construed; that it does not forbid the child from taking property bequeathed or devised to the `issue' of the adopting parent, * * *."
I have commented upon the New Jersey decisions at some length because of the confusion they have engendered and because of the novel question here involved. A careful analysis and consideration of these cases, however, clearly indicate, I am convinced, the decision I must make.
The policy of the legislature in enacting the adoption statute is clear. As I have pointed out, section 4 of that act, primafacie, concerns only the adopting parent and the adopted child. The statement of Vice-Chancellor Howell that, under the adoption statute, an adopted child may inherit from the foster parent, but that the adoption does not operate to create a capacity to take as a child under the will of some other person, conformed to that policy. Such interpretation was also in accord with the construction which had been put upon a similar statute by the Supreme Judicial Court of the State of Maine. Chief-Justice Gummere in the Book Case, speaking for the Court of Errors and Appeals, pointed out that the Adoption Act changed the statutory rules regulating the devolution of property by making the adopted child a lawful child of the decedent "for the purpose of sharing in the distribution of his estate." (Italics mine.) The rule declared by Vice-Chancellor Howell and, in more detail, in the Maine decision, has been approved (even if its application was not always necessary to the decision) in Dulfon v. Keasbey, in Fidelity Union Trust Co. v. Hall, and In re McEwan;
also, by Mr. Justice Minturn in Ahlemeyer *Page 329 
v. Miller, and in that case tacitly, if not affirmatively, by the Court of Errors and Appeals. It is true that the rule laid down in the Chancery decision of Haver v. Herder was couched in general language and, it is also true that the will under consideration in that case was the will of a stranger to the adoption proceedings and that the adoption in that instance took place after the death of the testator. However, the same Vice-Chancellor, in Fidelity Union Trust Co. v. Hall, approved of and applied the rule that an adopted child of a child of the testator does not take under a gift to "grandchildren" of the testator when the latter is a stranger to the adoption proceedings and the adoption occurs after the making of the will — unless there be other evidence in the instrument or the surrounding circumstances sufficient to show an intent by the testator that he should take.
The presumption that a testator who makes provision for a child, or children, or issue of another, did not intend to include an adoptive child unless other language in the will makes clear a contrary purpose, must now be accepted, I am convinced, as established law in this state. Indubitably then, where an adoption, to which the testator is a stranger, occurs after the execution of the will and after the decease of the testator, the adoptive child can not take.
The application of accepted rules of interpretation to the words chosen and employed by testatrix and to the circumstances surrounding her at the time of the execution of her will results in the conclusion that Barnard Lorence can not take under that instrument in substitution for his adoptive mother, Alice Caroline Keeler-Lorence, as her "lawful issue." For the reasons I have assigned, the decree of the Camden County Orphans Court should, therefore, be affirmed.
Justification obviously existed for the prosecution of these appeals, and the allowance of costs and counsel fees to all parties will be advised. *Page 330